# A F F I D A V I T

I, Harry Seto, Claims Coverage Underwriter of **Geico General Insurance Company** a corporation organized and existing under the laws of the state of Maryland, do hereby certify that the attached Policy Declaration sheet was printed from records retained in our computer data files. The specimen amendments, endorsements, and policy contract are standard forms with information particular to this policy. Attached is a copy of policy contract number **4040-68-39-57** in the name of **Erika Rose Klinger** for **Renewal** effective 12/10/07, issued on **11/06/07** and in effect on **03/28/08**.



_____
Harry Seto
Claims Coverage Underwriter



Account No. 31405                                        GEICO-CA        EM

Attention : 03acau

## Geico

<u>Customer Service:</u>

Metro Reporting Customer Support 1-800-245-6686 or help@metroreporting.com

Metropolitan Reporting Bureau
Box 926, William Penn Annex
Philadelphia, PA 19105-0926
Fax (800) 343-9047

*Type of Report:*    AUTO ACCIDENT


INSURED       :    ERIKA KLINGER

CLAIM NUMBER:      0281616070101020

POLICY NUM. :

DATE OF LOSS:     03/28/08

LOSS STREET :     VANCE DRIVE AND TUTOR

LOSS CITY     :    ANCHORAGE AK

POLICE DEPT.:     ANCHORAGE PD

REPORT NUM. :      0814210

INS. DRIVER :     UNKNOWN UNKNOWN

OTHER DRIVER:

PCT./DIST.    :

DESC.OF OTHER:


THANK YOU FOR THE ORDER!

Any questions or problems please feel free to contact us.

PH. (800) 245-6686 or Help@MetroReporting.com



*4031791443*

# ALASKA MOTOR VEHICLE COLLISION REPORT

| | DMV# | Incident/Case # |
|---|---|---|
| | | 08-14210 |

**Crash Information** (One choice per field unless otherwise noted - Other * should be explained in narrative)

| Total# Units: 2 | Crash Date: 03/28/2008 | Crash Time (24 hr): 18:04 | Crash Occurred in (City/Borough): Anchorage | Temp: 35 | Pstd Spd: 45 | EMS Run #: |
|---|---|---|---|---|---|---|

**Crash Day:**
- [ ] 01 Mon
- [ ] 02 Tue
- [ ] 03 Wed
- [ ] 04 Thu
- [X] 05 Fri
- [ ] 06 Sat
- [ ] 07 Sun

N: **Photos Taken:** [X] 01 Y [ ] 02 N

W: **Non-vehicular Property Damage:** [ ] 01 Y [ ] 03 Unk [X] 02 N

**Roadway Junction/ Type:**
- [ ] 01 Crossover
- [ ] 02 Driveway
- [ ] 03 Not a junction
- [ ] 04 On Ramp
- [ ] 05 Off Ramp
- [ ] 06 Railway crossing
- [ ] 07 Roundabout
- [ ] 08 T-intersection
- [ ] 09 Y-intersection
- [ ] 10 4-way intersection
- [ ] 11 5-point or more
- [X] 12 Other *
- [ ] 13 Unk

**Weather:**
- [ ] 01 Blowing sand, soil, dirt, snow
- [X] 02 Clear
- [ ] 03 Cloudy
- [ ] 04 Fog/Smoke
- [ ] 05 Ice Fog
- [ ] 06 Rain
- [ ] 07 Sleet, hail (freezing rain)
- [ ] 08 Severe crosswinds
- [ ] 09 Snow
- [ ] 10 Other *
- [ ] 11 Not Reported
- [ ] 12 Unk

**Roadway Character:**
- [X] 01 Straight/Lvl
- [ ] 02 Straight/Grd
- [ ] 03 Straight/Hlcrst
- [ ] 04 Curve/Lvl
- [ ] 05 Curve/Grd
- [ ] 06 Curve/Hlcrst
- [ ] 07 Unk

**Road Surface:**
- [X] 01 Dry
- [ ] 02 Ice
- [ ] 03 Water
- [ ] 04 Sand,mud dirt, oil, gravel
- [ ] 05 Slush
- [ ] 06 Snow
- [ ] 07 Wet
- [ ] 08 Other*

**Lighting:**
- [ ] 01 Dark-lighted roadway
- [ ] 02 Dark-roadway not lighted
- [ ] 03 Dark-unknown lighting
- [X] 04 Daylight
- [ ] 05 Twilight
- [ ] 06 Other *
- [ ] 07 Not Reported
- [ ] 08 Unk

**Location Control:** **RefPt:**

**Name of Street or Highway:** E TUDOR RD

| | miles |
| | feet |
| [X] | at int. w/ |

(Law enforcement use only):

[ ] N [ ] E
[ ] S [ ] W

**Cross Street, Bridge, etc:** VANCE DR

## Crash Description/Violation:

**Emergency Vehicle:** No

**Crash Diagram:**

Hit and Run: [X] **Original** Cross Reference #:

### Narrative

On 3/28/2008, at approximately 1900 hours, I responded to the intersection of E Tudor Rd. and Vance Dr. for a report of a traffic collision.

V1 was traveling west on Tudor Rd. and made a right turn (north) onto Vance Dr. V1 was traveling too fast to make the right turn and collided with V2, which was stopped on Vance Dr., waiting to turn onto Tudor Rd. The driver of V1 ran away before APD arrived.



Indicate North:

↑ N

NOT TO SCALE

VANCE DR

Unit 2

Unit 1

TUDOR RD

**Violation Section (s):**
Unit 1:

Unit 2:

**Ticket Description:**
Unit 1:

Unit 2:

**Location of First Sequence of Events:**
- [ ] 01 Bike Lane
- [ ] 02 Gore
- [ ] 03 Median
- [ ] 04 Outside trafficway
- [ ] 05 Parking lot
- [ ] 06 Roadside
- [X] 07 Roadway
- [ ] 08 Shared use paths
- [ ] 09 Shoulder
- [ ] 10 Unk

**First Sequence of Events, Collision:**
- [ ] 01 Aircraft
- [ ] 02 Animal
- [ ] 03 Bicyclist
- [ ] 04 Bridge/Overpass
- [ ] 05 Bridge rail
- [ ] 06 Crash cushion
- [ ] 07 Culvert
- [ ] 08 Curb/Wall
- [ ] 09 Ditch
- [ ] 10 Embankment
- [ ] 11 Fence
- [ ] 12 Guard rail face
- [ ] 13 Guard rail end
- [ ] 14 Light support
- [ ] 15 Machinery
- [ ] 16 Mail box
- [ ] 17 Median barrier
- [ ] 18 Moose
- [ ] 19 Parked vehicle
- [ ] 20 Pedestrian
- [ ] 21 Sidewalk
- [ ] 22 Sign
- [ ] 23 Snowberm
- [ ] 24 Traffic signal pole
- [ ] 25 Train
- [ ] 26 Tree/Shrub
- [ ] 27 Utility pole
- [ ] 28 Veh in transit
- [ ] 29 Veh-rear end
- [ ] 30 Veh-head on
- [X] 31 Veh-angle
- [ ] 32 Other fixed object

**First Sequence of Events, Non-collision:**
- [ ] 33 Cargo loss/shift
- [ ] 34 Crossed median/centerline
- [ ] 35 Downhill runaway
- [ ] 36 Equipment failure
- [ ] 37 Explosion/fire
- [ ] 38 Immersion
- [ ] 39 Jackknife
- [ ] 40 Overturn
- [ ] 41 Ran off road
- [ ] 42 Separation of units
- [ ] 43 Other*
- [ ] 44 Unk

[ ] Check if Supplemental Diagram

## Officer/Agency Information

| Officer Name: Davison, Derek _ | Officer PermID: 29886 | Agency: APD | Reviewing Officer Perm ID: 29230 | Review Date: 03/30/2008 |
|---|---|---|---|---|

Part A

12-200 Revised 9/12/01

# ALASKA MOTOR VEHICLE COLLISION REPORT

| DMV# | Incident/Case # |
|------|-----------------|
|      | 08-14210 |

| Unit #: 1 | Driver Name (Last, First, MI): | | Person Type: Driver | Sex: ☒ 01 M  ☐ 02 F | DOB: | Contact Phone: |
|---|---|---|---|---|---|---|

| OL /ID #: | O.L. State/State: | License Class: ☐ 01 CDL-A  ☐ 02 CDL-B | ☐ 03 CDL-C  ☐ 04 CDL-1C | ☐ 05 D  ☐ 06 MI | ☐ 07 M2  ☐ 08 IM | ☐ 09 IP | Ejected: ☐ 01 Y  ☒ 02 N  ☐ 03 P  ☐ 04 Unk |
|---|---|---|---|---|---|---|---|

Mailing Address:      City:      State:      Zip:

Extricated: ☐ 01 Y  ☒ 02 N  ☐ 03 Unk

Physical Address:      City:      State:      Zip:

NFR: ☐ 01 Y  ☐ 02 N    Ins Coverage: ☐ 01 Y  ☐ 02 N

Ins Company:

### Environment Circumstances:
- ☐ 01 Glare
- ☐ 02 Obstruction
- ☐ 03 Weather
- ☐ 04 None
- ☐ 05 Other *
- ☒ 06 Not Reported

### Injury Status:
- ☐ 01 Fatal
- ☐ 02 Incapacitating *
- ☐ 03 Non-incapacitating *
- ☐ 04 Possible
- ☐ 05 None
- ☐ 06 Not Reported
- ☒ 07 Unk

### Driver Restraint/Airbag (4 choice max):
- ☐ 01 Not used
- ☐ 02 Not instld
- ☐ 03 Helmet
- ☒ 04 Lap/Shldr
- ☐ 05 Lap only
- ☐ 06 Shldr only
- ☐ 07 Prp Child Rst
- ☐ 08 Imp Child Rst
- ☐ 09 A/bag Dplyd
- ☐ 10 A/bag not Dplyd
- ☐ 11 A/bag swtch off
- ☐ 12 Side bag Dplyd
- ☐ 13 Not Reported
- ☐ 14 Unk

### Alcohol/Drugs Suspected:
- ☐ 01 None  ☐ 02 Alcohol  ☐ 03 Drugs  ☐ 04 Both

### Test Given:
- ☐ 01 Blood  ☐ 02 Breath  ☐ 03 Not Given  ☐ 04 Refused

BAC Level:    Transported: ☐ 01 Y  ☒ 02 N  ☐ 03 Unk

### Human Circumstances (2 choice max):
- ☐ 01 No improper driving
- ☐ 02 Backing unsafely
- ☐ 03 Cell phone use
- ☐ 04 Disregard traffic control device other than signal
- ☐ 05 Driver inattention
- ☐ 06 Driver inexperience
- ☐ 07 Drove off road
- ☐ 08 Emotional
- ☐ 09 Failure to yield
- ☐ 10 Fell asleep
- ☐ 11 Following too closely
- ☐ 12 Illness
- ☐ 13 Improper lane usage/change
- ☐ 14 Improper passing
- ☐ 15 Improper turn
- ☐ 16 Loss of consciousness
- ☐ 17 Passenger distraction
- ☐ 18 Pedestrian error/confusion
- ☐ 19 Physical disability
- ☐ 20 Red light violation
- ☐ 21 Stop sign violation
- ☐ 22 Taking prescription meds
- ☐ 23 Unsafe speed
- ☐ 24 Wrong side/way
- ☐ 25 Other *
- ☐ 26 Unk

### Transported By:
- ☐ 01 Air Ambulance
- ☐ 02 Airplane
- ☐ 03 EMS
- ☐ 04 Helicopter
- ☐ 05 Police
- ☐ 06 Private vehicle
- ☐ 07 Unk
- ☒ 08 N/A

### Transported To:
- ☐ 01 Clinic
- ☐ 02 Hospital
- ☐ 03 Mortuary
- ☐ 04 Residence
- ☐ 05 Unk
- ☒ 06 N/A

---

**Vehicle 1 Information**

| Vehicle Damage: | No. of Occupants: 2 | Vehicle Owner Name (Last, First, MI): | | Contact Phone: |
|---|---|---|---|---|
| ☐ 01 None/Minor  ☒ 03 Disabling  ☐ 05 Unk | | | | |
| ☐ 02 Functional  ☐ 04 Totaled | | | | |

P - primary
S - secondary



FRONT   P   09   05   REAR

Mailing Address:    City:    State:    Zip:

| Damage Estimate: ☒ Over $501 | VIN: 1GKEK63U34J151937 | License Plate #: UNK | State: AK |
|---|---|---|---|

| Under Carriage Damage: ☐ 01 Y  ☒ 02 N | Veh Year: | Make: General Motors Corp. | Model: Yukon | Color: BLK |
|---|---|---|---|---|

| Direction of Travel: ☐ 01 North  ☐ 02 South  ☐ 03 East  ☒ 04 West  ☐ 05 Unk | Veh Towed: ☐ 01Y  ☐ 02 N  ☐ 03 Unk |
|---|---|

Towed By:

Unit Description:   **GMC YUKON**

### Vehicle Configuration (non-commercial only):
- ☐ 01 Dog Sled
- ☐ 02 Light truck (only 4 tires)
- ☐ 03 Motorhome
- ☐ 04 Motorcycle
- ☐ 05 Off highway vehicle
- ☒ 06 Passenger car
- ☐ 07 Pedalcycle
- ☐ 08 Pedestrian
- ☐ 09 Other *
- ☐ 10 Unk

### Vehicle Configuration (commercial only):
- ☐ 01 Single-unit (2-axles)
- ☐ 02 Single-unit (3+ axles)
- ☐ 03 Truck/trailer
- ☐ 04 Tractor (bobtail)
- ☐ 05 Tractor/semi-trailer
- ☐ 06 Tractor/doubles
- ☐ 07 Tractor/triples
- ☐ 08 Van/enclosed box
- ☐ 09 Unk heavy truck
- ☐ 10 Other *
- ☐ 11 Unk

### Body Type (2 choice max, commercial only):
- ☐ 01 Auto transporter
- ☐ 02 Bus (15 or more seats)
- ☐ 03 Bus (7-15 seats)
- ☐ 04 School bus
- ☐ 05 Cargo tank
- ☐ 06 Concrete mixer
- ☐ 07 Dump
- ☐ 08 Flatbed
- ☐ 09 Garbage/refuse
- ☐ 10 Grain/chips/gravel
- ☐ 11 Pole
- ☐ 12 Other *
- ☐ 13 Unk

### Vehicle Circumstances:
- ☐ 01 Accelerator defective
- ☐ 02 Brakes defective
- ☐ 03 Headlights defective
- ☐ 04 Other lighting defective
- ☐ 05 Oversized vehicle
- ☐ 06 Steering failure
- ☐ 07 Tire failure/inadequate
- ☐ 08 Tow hitch defective
- ☐ 09 Windshield damaged
- ☐ 10 None
- ☒ 11 Other *

### Vehicle Action:
- ☐ 01 Avoiding objects in road
- ☐ 02 Backing
- ☐ 03 Changing lanes
- ☐ 04 Entering traffic lane
- ☐ 05 Leaving traffic lane
- ☐ 06 Making U-turn
- ☐ 07 Merging
- ☐ 08 Out of control
- ☐ 09 Passing
- ☐ 10 Parked
- ☐ 11 Skidding
- ☐ 12 Slowing
- ☐ 13 Starting in traffic
- ☐ 14 Stopped
- ☐ 15 Straight ahead
- ☒ 16 Turning right
- ☐ 17 Turning left
- ☐ 18 Other *
- ☐ 19 Unk

### Roadway Circumstances:
- ☐ 01 Debris
- ☐ 02 Inoperative traffic device
- ☐ 03 Missing traffic device
- ☐ 04 Obscured traffic device
- ☐ 05 Obstruction in roadway
- ☐ 06 Shoulder
- ☐ 07 Road surface condition
- ☐ 08 Ruts, holes, bumps
- ☐ 09 School zone
- ☐ 10 Work zone
- ☐ 11 Worn, polished
- ☒ 12 None
- ☐ 13 Other *
- ☐ 14 Unk

### Traffic Control:
- ☐ 01 Flashing signal
- ☒ 02 No controls
- ☐ 03 Road const signs
- ☐ 04 RR crossing device
- ☐ 05 School zone signs
- ☐ 06 Stop Sign
- ☐ 07 Traffic control signal
- ☐ 08 Warning signs
- ☐ 09 Yield sign
- ☐ 10 Officer/flagman/guard
- ☐ 11 Other *
- ☐ 12 Unk

---

### Commercial Vehicle Information
(If crash involves a commercial vehicle, complete this section and forward a copy of report to CVE unit, 12050 Industry Way-Bldg O-Suite #6, Anch, AK 99515)

| Carrier Name: | | |
|---|---|---|
| Address: | Gross Weight (lbs): | |
| | Carrier ID#: | |
| City: | State: | Zip: | Contact Phone: |

### Carrier ID Source:
- ☐ 01 Driver/Vehicle
- ☐ 02 Log Book
- ☐ 03 Shipping Papers
- ☐ 04 Trip Manifest

### Issuing Authority:
- ☐ 01 US DOT
- ☐ 02 ICC
- ☐ 03 AKS

### Placard:
- ☐ 01 Y
- ☐ 02 N
- ☐ 03 Unk

### HazMat Released:
- ☐ 01 Y
- ☐ 02 N
- ☐ 03 Unk

### Second Sequence of Events, Collision:
- ☐ 01 Aircraft
- ☐ 02 Animal
- ☐ 03 Bicycle
- ☐ 04 Bridge/Overpass
- ☐ 05 Bridge rail
- ☐ 06 Crash cushion
- ☐ 07 Culvert
- ☐ 08 Curb/Wall
- ☐ 09 Ditch
- ☐ 10 Embankment
- ☐ 11 Fence
- ☐ 12 Guard rail face
- ☐ 13 Guard rail end
- ☐ 14 Light support
- ☐ 15 Machinery
- ☐ 16 Mail box
- ☐ 17 Median barrier
- ☐ 18 Moose
- ☐ 19 Parked vehicle
- ☐ 20 Pedestrian
- ☐ 21 Sidewipe
- ☐ 22 Sign
- ☐ 23 Snow berm
- ☐ 24 Traffic signal pole
- ☐ 25 Train
- ☐ 26 Tree/shrub
- ☐ 27 Utility pole
- ☐ 28 Veh in transit
- ☐ 29 Veh-rear end
- ☐ 30 Veh-head on
- ☐ 31 Veh-angle
- ☐ 32 Other fixed object

### Second Sequence of Events, Non-Collision:
- ☐ 33 Cargo loss/shift
- ☐ 34 Crossed median/centerline
- ☐ 35 Downhill runaway
- ☐ 36 Equipment failure
- ☐ 37 Explosion/fire
- ☐ 38 Immersion
- ☐ 39 Jackknife
- ☐ 40 Overturn
- ☐ 41 Ran off road
- ☐ 42 Separation of units
- ☐ 43 Other *
- ☐ 44 Unk

## Driver Information (One choice per field unless otherwise noted - Other * should be explained in narrative)

| Unit #: 2 | Driver Name (Last, First, MI): KLINGER, ERIKA R | | Person Type: Driver | Sex: 01 M [X] 02 F | DOB: 02/16/1983 | Contact Phone: (907) 301-6928 |
|---|---|---|---|---|---|---|

| OL /ID #: OL:7067918 | O.L State/State: AK/ AK | License Class: [ ]01 CDL-A [ ]02 CDL-B | [ ]03 CDL-C [ ]04 CDL-1C | [X]05 D [ ]06 M | [ ]07 M2 [ ]08 IM | [ ]09 IP | Ejected: 01 Y [X]02 N [ ]04 Unk | [ ]01 P [ ]03 P [ ]04 Unk |
|---|---|---|---|---|---|---|---|---|

Extricated: 01 Y [X]02 N [ ]03 Unk

| Mailing Address: 5600 LAKE OTIS PKWY H180 | City: ANCHORAGE | State: AK | Zip: 99507 | NFR: [X]01 Y [ ]02 N | Ins Coverage: [X]02 N |
|---|---|---|---|---|---|

| Physical Address: 5600 LAKE OTIS PKWY H180 | City: ANCHORAGE | State: AK | Zip: 99507 | Ins Company: GEICO | |
|---|---|---|---|---|---|

### Environment Circumstances:
- [ ] 01 Glare
- [ ] 02 Obstruction
- [ ] 03 Weather
- [X] 04 None
- [ ] 05 Other *
- [ ] 06 Not Reported

### Injury Status:
- [ ] 01 Fatal
- [ ] 02 Incapacitating *
- [ ] 03 Non-incapacitating *
- [ ] 04 Possible
- [X] 05 None
- [ ] 06 Not Reported
- [ ] 07 Unk

### Driver Restraint/Airbag (4 choices max):
- [ ] 01 Not used
- [ ] 02 Used
- [ ] 03 Helmet
- [ ] 04 Lap/Shldr
- [ ] 05 Lap only
- [ ] 06 Shldr only
- [ ] 07 Frp Child Rst
- [ ] 08 Imp Child Rst
- [ ] 09 A/bag Dpyld
- [ ] 10 A/bag not Dplyd
- [ ] 11 A/bag switch off
- [ ] 12 Side bag Dplyd
- [ ] 13 Not Reported
- [ ] 14 Unk

### Alcohol/Drugs Suspected:
- [X] 01 None
- [ ] 02 Alcohol
- [ ] 03 Drugs
- [ ] 04 Both

### Test Given:
- [ ] 01 Blood
- [ ] 02 Breath
- [X] 03 Not Given
- [ ] 04 Refused

BAC Level: _____ 

Transported: [ ]01 Y [X]02 N [ ]03 Unk

### Human Circumstances (2 choices max):
- [X] 01 No improper driving
- [ ] 02 Backing unsafely
- [ ] 03 Cell phone use
- [ ] 04 Disregard traffic control device other than signal
- [ ] 05 Driver inattention
- [ ] 06 Driver inexperience
- [ ] 07 Drove off road
- [ ] 08 Emotional
- [ ] 09 Failure to yield
- [ ] 10 Fell asleep
- [ ] 11 Following too closely
- [ ] 12 Illness
- [ ] 13 Improper lane usage/change
- [ ] 14 Improper passing
- [ ] 15 Improper turn
- [ ] 16 Loss of consciousness
- [ ] 17 Passenger distraction
- [ ] 18 Pedestrian error/confusion
- [ ] 19 Physical disability
- [ ] 20 Red light violation
- [ ] 21 Stop sign violation
- [ ] 22 Taking prescription meds
- [ ] 23 Unsafe speed
- [ ] 24 Wrong side/way
- [ ] 25 Other*
- [ ] 26 Unk

### Transported By:
- [ ] 01 Air Ambulance
- [ ] 02 Airplane
- [ ] 03 EMS
- [ ] 04 Helicopter
- [ ] 05 Police
- [ ] 06 Private vehicle
- [ ] 07 Unk
- [X] 08 N/A

### Transported To:
- [ ] 01 Clinic
- [ ] 02 Hospital
- [ ] 03 Mortuary
- [ ] 04 Residence
- [X] 06 N/A

## Vehicle 2 Information

| Vehicle Damage: | No. of Occupants: 1 | Vehicle Owner Name (Last, First, MI): KLINGER, ERIKA R | Contact Phone: (907) 301-6928 |
|---|---|---|---|

- [ ] 01 None/Minor
- [X] 03 Disabling
- [ ] 05 Unk
- [ ] 02 Functional
- [ ] 04 Totaled

P - primary
S - secondary

| Mailing Address: 5600 LAKE OTIS PKWY H180 | City: ANCHORAGE | State: AK | Zip: 99507 |
|---|---|---|---|

| Damage Estimate: [X] Over $501 | VIN: 1FAFP34P33W259295 | License Plate #: EUL114 | State: AK |
|---|---|---|---|



| Under Carriage Damage: [ ]01 Y [X]02 N | Veh Year: 2003 | Make: Ford | Model: | Color: RED |
|---|---|---|---|---|

### Direction of Travel:
- [ ] 01 North
- [X] 02 South
- [ ] 03 East
- [ ] 04 West
- [ ] 05 Unk

Veh Towed: [ ]01 Y [X]02 N [ ]03 Unk

Towed By:

Unit Description: FORD ESCORT

### Vehicle Configuration (non-commercial only):
- [ ] 01 Dog Sled
- [ ] 02 Light truck (only 4 tires)
- [ ] 03 Motorhome
- [ ] 04 Motorcycle
- [ ] 05 Off highway vehicle
- [X] 06 Passenger car
- [ ] 07 Pedalcycle
- [ ] 08 Pedestrian
- [ ] 09 Other *
- [ ] 10 Unk

### Vehicle Configuration (commercial only):
- [ ] 01 Single-unit (2-axles)
- [ ] 02 Single-unit (3+ axles)
- [ ] 03 Truck/trailer
- [ ] 04 Tractor (bobtail)
- [ ] 05 Tractor/semi-trailer
- [ ] 06 Tractor/doubles
- [ ] 07 Tractor/triples
- [ ] 08 Van/enclosed box
- [ ] 09 Unk heavy truck
- [ ] 10 Other *
- [ ] 11 Unk

### Body Type (2 choices max, commercial only):
- [ ] 01 Auto transporter
- [ ] 02 Bus (15 or more seats)
- [ ] 03 Bus (7-15 seats)
- [ ] 04 School bus
- [ ] 05 Cargo tank
- [ ] 06 Concrete mixer
- [ ] 07 Dump
- [ ] 08 Flatbed
- [ ] 09 Garbage/refuse
- [ ] 10 Grain/chips/gravel
- [ ] 11 Pole
- [ ] 12 Other *
- [ ] 13 Unk

### Vehicle Circumstances:
- [ ] 01 Accelerator defective
- [ ] 02 Brakes defective
- [ ] 03 Headlights defective
- [ ] 04 Other lighting defective
- [ ] 05 Oversized vehicle
- [ ] 06 Steering failure
- [ ] 07 Tire failure/inadequate
- [ ] 08 Tow hitch defective
- [ ] 09 Windshield defective
- [X] 10 None
- [ ] 11 Other*
- [ ] 12 Unk

### Vehicle Action:
- [ ] 01 Avoiding objects in road
- [ ] 02 Backing
- [ ] 03 Changing lanes
- [ ] 04 Entering traffic lane
- [ ] 05 Leaving traffic lane
- [ ] 06 Making U-turn
- [ ] 07 Merging
- [ ] 08 Out of control
- [ ] 09 Passing
- [ ] 10 Parked
- [ ] 11 Skidding
- [ ] 12 Slowing
- [ ] 13 Starting in traffic
- [X] 14 Stopped
- [ ] 15 Straight ahead
- [ ] 16 Turning right
- [ ] 17 Turning left
- [ ] 18 Other *
- [ ] 19 Unk

### Roadway Circumstances:
- [ ] 01 Debris
- [ ] 02 Inoperative traffic device
- [ ] 03 Missing traffic device
- [ ] 04 Obscured traffic device
- [ ] 05 Obstruction in roadway
- [ ] 06 Shoulder
- [ ] 07 Road surface condition
- [ ] 08 Ruts, holes, bumps
- [ ] 09 School zone
- [ ] 10 Work zone
- [ ] 11 Worn, polished
- [X] 12 None

### Traffic Control:
- [ ] 01 Flashing signal
- [ ] 02 No controls
- [ ] 03 Road const signs
- [ ] 04 RR crossing device
- [ ] 05 School zone signs
- [X] 06 Stop Sign
- [ ] 07 Traffic control signal
- [ ] 08 Warning signs
- [ ] 09 Yield sign
- [ ] 10 Officer/flagman/guard
- [ ] 11 Other *
- [ ] 12 Unk

## Commercial Vehicle Information
(If crash involves a commercial vehicle, complete this section and forward a copy of report to CVE unit, 12050 Industry Way-Bldg O-Suite #6, Anch, AK 99515)

| Carrier Name: | | Gross Weight (lbs): |
|---|---|---|
| Address: | | Carrier ID#: |
| City: | State: | Zip: | Contact Phone: |

### Carrier ID Source:
- [ ] 01 Driver/Vehicle
- [ ] 02 Log Book
- [ ] 03 Shipping Papers
- [ ] 04 Trip Manifest

### Issuing Authority:
- [ ] 01 US DOT
- [ ] 02 ICC
- [ ] 03 AKS

### Placard:
- [ ] 01 Y
- [ ] 02 N
- [ ] 03 Unk

### HazMat Released:
- [ ] 01 Y
- [ ] 02 N
- [ ] 03 Unk

### Second Sequence of Events, Collision:
- [ ] 01 Aircraft
- [ ] 02 Animal
- [ ] 03 Bicyclist
- [ ] 04 Bridge/Overpass
- [ ] 05 Bridge rail
- [ ] 06 Crash cushion
- [ ] 07 Culvert
- [ ] 08 Curb/Wall
- [ ] 09 Ditch
- [ ] 10 Embankment
- [ ] 11 Fence
- [ ] 12 Guard rail face
- [ ] 13 Guard rail end
- [ ] 14 Light support
- [ ] 15 Machinery
- [ ] 16 Mail box
- [ ] 17 Median barrier
- [ ] 18 Moose
- [ ] 19 Parked vehicle
- [ ] 20 Pedestrian
- [ ] 21 Sideswipe
- [ ] 22 Sign
- [ ] 23 Snow berm
- [ ] 24 Traffic signal pole
- [ ] 25 Train
- [ ] 26 Tree/shrub
- [ ] 27 Utility pole
- [ ] 28 Veh in transit
- [ ] 29 Veh-rear end
- [ ] 30 Veh-head on
- [ ] 31 Veh-angle
- [ ] 32 Other fixed object

### Second Sequence of Events, Non-Collision:
- [ ] 33 Cargo loss/shift
- [ ] 34 Crossed median/centerline
- [ ] 35 Downhill runaway
- [ ] 36 Equipment failure
- [ ] 37 Explosion/fire
- [ ] 38 Immersion
- [ ] 39 Jackknife
- [ ] 40 Overturn
- [ ] 41 Ran off road
- [ ] 42 Separation of units
- [ ] 43 Other *
- [ ] 44 Unk

# ALASKA MOTOR VEHICLE COLLISION REPORT

| | DMV# | Incident/Case # |
|---|---|---|
| | | 08-14210 |

**Passenger/Witness Information** (One choice per field unless otherwise noted - Other * should be explained in narrative)

## Unit 1

| Unit #: 1 | Name (Last, First, MI): POITRA, JEFFREY J | | Sex: [X] 01 M  [ ] 02 F | OL/ID #: OL:6977710 /SID:Uakaowa | O.L. State/ID State: AK/AK |
|---|---|---|---|---|---|
| | | | DOB: 01/21/1984 | | |

| Person Type: | Physical Address: | City: | State: | Zip: | Contact Phone: |
|---|---|---|---|---|---|
| [X] 01 Passenger | 4334 VANCE DR APT B-1 | ANCHORAGE | AK | | (573) 337-1509 |
| [ ] 02 Witness | | | | | |

| Seat Location: | Restraint/Airbag Information (4 choice max): | | Ejected: | Injury Status: | Transported: [ ] 01 Y  [X] 02 N  [ ] 03 Unk |
|---|---|---|---|---|---|
| [ ] 01 Center front | [ ] 01 Not used | [ ] 08 Imp Chld Rst | [ ] 01 Y | [ ] 01 Fatal | |
| [X] 02 Right front | [ ] 02 None Instld | [ ] 09 A/bag Dplyd | [X] 02 N | [ ] 02 Incapacitating | Transported By: | Transported To: |
| [ ] 03 Left rear | [ ] 03 Helmet | [ ] 10 A/bag not Dplyd | [ ] 03 P | [ ] 03 Non-incapacitating | [ ] 01 Air Ambulance | [ ] 01 Clinic |
| [ ] 04 Center Rear | [X] 04 Lap/Shldr | [ ] 11 A/bag switch off | [ ] 04 Unk | [ ] 04 Possible | [ ] 02 Airplane | [ ] 02 Hospital |
| [ ] 05 Right Rear | [ ] 05 Lap only | [ ] 12 Side bag Dplyd | | [X] 05 None | [ ] 03 EMS | [ ] 03 Mortuary |
| [ ] 06 Other * | [ ] 06 Shldr only | [ ] 13 Not Reported | Extricated: | [ ] 06 Not Reported | [ ] 04 Helicopter | [ ] 04 Residence |
| [ ] 07 N/A | [ ] 07 Prp Chld Rst | [ ] 14 Unk | [ ] 01 Y | [ ] 07 Unk | [ ] 05 Police | [ ] 05 Unk |
| [ ] 08 Unk | | | [X] 02 N | | [ ] 06 Private vehicle | [ ] 06 N/A |
| | | | [ ] 03 Unk | | [ ] 07 Unk | |
| | | | | | [X] 08 N/A | |

## Unit 2

| Unit #: | Name (Last, First, MI): MCCOY, ALMAX | | Sex: [X] 01 M  [ ] 02 F | OL/ID #: OL:6878998 /SID:Uakaowa | O.L. State/ID State: AK/AK |
|---|---|---|---|---|---|
| | | | DOB: 03/14/1956 | | |

| Person Type: | Physical Address: | City: | State: | Zip: | Contact Phone: |
|---|---|---|---|---|---|
| [ ] 01 Passenger | 3931 PATRICIA LN | ANCHORAGE | AK | | (907) 223-0497 |
| [X] 02 Witness | | | | | |

| Seat Location: | Restraint/Airbag Information (4 choice max): | | Ejected: | Injury Status: | Transported: [ ] 01 Y  [ ] 02 N  [ ] 03 Unk |
|---|---|---|---|---|---|
| [ ] 01 Center front | [ ] 01 Not used | [ ] 08 Imp Chld Rst | [ ] 01 Y | [ ] 01 Fatal | |
| [ ] 02 Right front | [ ] 02 None Instld | [ ] 09 A/bag Dplyd | [ ] 02 N | [ ] 02 Incapacitating | Transported By: | Transported To: |
| [ ] 03 Left rear | [ ] 03 Helmet | [ ] 10 A/bag not Dplyd | [ ] 03 P | [ ] 03 Non-incapacitating | [ ] 01 Air Ambulance | [ ] 01 Clinic |
| [ ] 04 Center Rear | [ ] 04 Lap/Shldr | [ ] 11 A/bag switch off | [ ] 04 Unk | [ ] 04 Possible | [ ] 02 Airplane | [ ] 02 Hospital |
| [ ] 05 Right Rear | [ ] 05 Lap only | [ ] 12 Side bag Dplyd | | [ ] 05 None | [ ] 03 EMS | [ ] 03 Mortuary |
| [ ] 06 Other * | [ ] 06 Shldr only | [ ] 13 Not Reported | Extricated: | [ ] 06 Not Reported | [ ] 04 Helicopter | [ ] 04 Residence |
| [ ] 07 N/A | [ ] 07 Prp Chld Rst | [ ] 14 Unk | [ ] 01 Y | [ ] 07 Unk | [ ] 05 Police | [ ] 05 Unk |
| [ ] 08 Unk | | | [ ] 02 N | | [ ] 06 Private vehicle | [ ] 06 N/A |
| | | | [ ] 03 Unk | | [ ] 07 Unk | |
| | | | | | [ ] 08 N/A | |

## (Blank Unit)

| Unit #: | Name (Last, First, MI): | | Sex: [ ] 01 M  [ ] 02 F | OL/ID #: | ID State: |
|---|---|---|---|---|---|
| | | | DOB: | | |

| Person Type: | Physical Address: | City: | State | Zip: | Contact Phone: |
|---|---|---|---|---|---|
| [ ] 01 Passenger | | | | | |
| [ ] 02 Witness | | | | | |

| Seat Location: | Restraint/Airbag Information (4 choice max): | | Ejected: | Injury Status: | Transported: [ ] 01 Y  [ ] 02 N  [ ] 03 Unk |
|---|---|---|---|---|---|
| [ ] 01 Center front | [ ] 01 Not used | [ ] 08 Imp Chld Rst | [ ] 01 Y | [ ] 01 Fatal | |
| [ ] 02 Right front | [ ] 02 None Instld | [ ] 09 A/bag Dplyd | [ ] 02 N | [ ] 02 Incapacitating | Transported By: | Transported To: |
| [ ] 03 Left rear | [ ] 03 Helmet | [ ] 10 A/bag not Dplyd | [ ] 03 P | [ ] 03 Non-incapacitating | [ ] 01 Air Ambulance | [ ] 01 Clinic |
| [ ] 04 Center Rear | [ ] 04 Lap/Shldr | [ ] 11 A/bag switch off | [ ] 04 Unk | [ ] 04 Possible | [ ] 02 Airplane | [ ] 02 Hospital |
| [ ] 05 Right Rear | [ ] 05 Lap only | [ ] 12 Side bag Dplyd | | [ ] 05 None | [ ] 03 EMS | [ ] 03 Mortuary |
| [ ] 06 Other * | [ ] 06 Shldr only | [ ] 13 Not Reported | Extricated: | [ ] 06 Not Reported | [ ] 04 Helicopter | [ ] 04 Residence |
| [ ] 07 N/A | [ ] 07 Prp Chld Rst | [ ] 14 Unk | [ ] 01 Y | [ ] 07 Unk | [ ] 05 Police | [ ] 05 Unk |
| [ ] 08 Unk | | | [ ] 02 N | | [ ] 06 Private vehicle | [ ] 06 N/A |
| | | | [ ] 03 Unk | | [ ] 07 Unk | |
| | | | | | [ ] 08 N/A | |

## (Blank Unit)

| Unit #: | Name (Last, First, MI): | | Sex: [ ] 01 M  [ ] 02 F | OL/ID #: | ID State: |
|---|---|---|---|---|---|
| | | | DOB: | | |

| Person Type: | Physical Address: | City: | State | Zip: | Contact Phone: |
|---|---|---|---|---|---|
| [ ] 01 Passenger | | | | | |
| [ ] 02 Witness | | | | | |

| Seat Location: | Restraint/Airbag Information (4 choice max): | | Ejected: | Injury Status: | Transported: [ ] 01 Y  [ ] 02 N  [ ] 03 Unk |
|---|---|---|---|---|---|
| [ ] 01 Center front | [ ] 01 Not used | [ ] 08 Imp Chld Rst | [ ] 01 Y | [ ] 01 Fatal | |
| [ ] 02 Right front | [ ] 02 None Instld | [ ] 09 A/bag Dplyd | [ ] 02 N | [ ] 02 Incapacitating | Transported By: | Transported To: |
| [ ] 03 Left rear | [ ] 03 Helmet | [ ] 10 A/bag not Dplyd | [ ] 03 P | [ ] 03 Non-incapacitating | [ ] 01 Air Ambulance | [ ] 01 Clinic |
| [ ] 04 Center Rear | [ ] 04 Lap/Shldr | [ ] 11 A/bag switch off | [ ] 04 Unk | [ ] 04 Possible | [ ] 02 Airplane | [ ] 02 Hospital |
| [ ] 05 Right Rear | [ ] 05 Lap only | [ ] 12 Side bag Dplyd | | [ ] 05 None | [ ] 03 EMS | [ ] 03 Mortuary |
| [ ] 06 Other * | [ ] 06 Shldr only | [ ] 13 Not Reported | Extricated: | [ ] 06 Not Reported | [ ] 04 Helicopter | [ ] 04 Residence |
| [ ] 07 N/A | [ ] 07 Prp Chld Rst | [ ] 14 Unk | [ ] 01 Y | [ ] 07 Unk | [ ] 05 Police | [ ] 05 Unk |
| [ ] 08 Unk | | | [ ] 02 N | | [ ] 06 Private vehicle | [ ] 06 N/A |
| | | | [ ] 03 Unk | | [ ] 07 Unk | |
| | | | | | [ ] 08 N/A | |

Davison, Derek _; 29886          Part C          12-200 Revised 9/12/01

DISPATCH:

On 3/28/2008, at approximately 1900 hours, I responded to the intersection of E Tudor Rd. and Vance Dr. for a report of a traffic collision.

ARRIVAL/OBSERVATIONS:

When I arrived, the driver of V2 was present and a male that identified himself as Jeffrey POITRA was present as well. POITRA claimed to be the owner of V1. The driver of V1 had reportedly run away from the scene immediately after the collision.

INTERVIEW:

Erika KLINGER, the driver of V2, reported the following.

KLINGER was stopped on Vance Dr. waiting to turn onto Tudor Rd. V1 was traveling west on Tudor Rd. and started to make a right turn onto Vance from Tudor Rd. at a high rate of speed. The female driver could not make the turn and drove straight into V2. The female driver ran away from the scene immediately after the collision.

KLINGER described the driver of V1 as a white female in her 20's with blonde hair. The driver of V2 would recognize the driver of V1 if she saw her again.

KLINGER added that POITRA was a passenger in V1.

INTERVIEW:

Almax MCCOY, a witness to the collision, reported the following.

MCCOY stated he was following V1 on Tudor Rd. and saw the collision. MCCOY stated the driver of V1 was driving recklessly, switching lanes, and driving very fast. MCCOY said the driver of V1 tried to make the right turn onto Vance Dr. from Tudor Rd. but was traveling too fast and collided with V2. MCCOY did not see the driver of V1.

INTERVIEW:

Jeffrey POITRA a passenger in V1, reported the following.

POITRA claims to be the owner of V1. POITRA said he was intoxicated and allowed a female, whom he just met drive V1 to his residence on Vance Dr. from the 'Peanut Farm' bar.

POITRA said he did not ask the female suspect her name because he just planned on taking her to his apartment for sex and was then going to kick her out. POITRA said the female suspect was intoxicated as well.

POITRA explained that the female suspect was driving too fast to make the turn onto Vance Dr. and collided with V2.

POITRA said he might be able to contact the female suspect but he does not know where she lives, her name, or her phone number.

ACTION TAKEN:

V1, a black GMC Yukon, does not have license plates and it has not been registered in Alaska because I could not find the VIN in APSIN. The VIN sticker on the door had been removed.

POITRA had paperwork from 'Park and Sell' showing the sale of a 2004 GMC Yukon but the VIN on the paperwork did not match the VIN on the dash of V1.

Additionally, POITRA said he has insurance on the vehicle but had no paperwork.

| ALASKA MOTOR VEHICLE COLLISION REPORT | DMV# | Incident/Case # 08-14210_ |
|---|---|---|

I had the vehicle towed for safekeeping and I put a hold on the vehicle until ownership is established.

INFORMATION:

V2 insured by Geico# 4040-68-39-57.

FOLLOW-UP:

Supplemental reports will follow with any new information.

CASE STATUS:

Pending.



Davison, Derek _: 29888        Part C        12-200 Revised 9/12/01



■ Government Employees Insurance Company
■ GEICO General Insurance Company
■ GEICO Indemnity Company
■ GEICO Casualty Company
■ Criterion Insurance Agency, Inc.
(Colonial County Mutual Ins.)

1-800-841-3000

One Geico West Box 509119
San Diego, CA   92150-9119

August 25, 2008

Erika Klinger
Apt. C4
4960 E 43rd Ave.
Anchorage, AK 99508-5613

CLAIM NUMBER: 0281616070101020
INSURED: Erika Klinger
LOSS DATE: 03/28/08

Dear Erika Klinger:

We are filing a claim against the responsible party for the total
amount of damage to your vehicle, including your deductible of
$500.

It usually takes about three months from the date we make our
request to receive reimbursement.  However, if we do not receive
full cooperation from the responsible party, it could take
longer.

We will make every effort to recover the money as quickly as
possible and will inform you of any further developments.

If you have questions, please contact me at the number below.
Please refer to our claim number when writing or calling about
this claim.

Sincerely,


DEBBIE SANDEFUR (SCAP)

PAYMENT RECOVERY UNIT 800-654-5896 extension 5977
GEICO General Insurance Company

35

**GEICO**

# Family Automobile Policy Amendment

Policy Number:

## Emergency Road Service Coverage

*Your* policy provisions are amended as follows:

SECTION III

PHYSICAL DAMAGE COVERAGES

Emergency Road Service

*You* have this coverage if "Emergency Road Service" appears in the "Coverages" space on the declarations page.

We will pay the fair cost *you* incur for the *owned* or non-owned *auto* for:

1. mechanical labor up to one hour at the place of breakdown;
2. lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;

3. if it will not run, towing to the nearest repair facility where the necessary repairs can be made;
4. towing it out if it is stuck on or immediately next to a public highway;
5. delivery of gas, oil, loaned battery, or change of tire. WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

*W. C. E. Robinson*
W. C. E. Robinson
Secretary

*O. M. Nicely*
O. M. Nicely
President

A-115 (02-02)



Policy Number:

We agree with you that the policy is amended as follows:

**SECTION III - PHYSICAL DAMAGE COVERAGES**

The following coverage is added:

**Coverage-Rental Reimbursement**

When there is a *loss* to an *owned auto* for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the *insured* toward costs the *insured* incurs to rent an auto. Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the *owned auto*. This coverage applies only if:

1. The *owned auto* is withdrawn from use for more than 24 consecutive hours, and
2. The *loss* to the *owned auto* is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the *insured* toward costs the *insured* incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the *insured* for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and
2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy. In that event, the amount payable under this amendment is the amount by which this coverage exceeds those described in Section III of the policy; and
3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this amendment.

Reimbursement for rental charges shall end the earliest of when the *owned auto* has been:

1. Returned to *you*;
2. Repaired;
3. Replaced; or
4. If the *owned auto* is deemed by us to be a total loss, then seventy two (72) hours after we pay the applicable limit of liability under Section III.

No deductible applies to this coverage.

The coverage provided by this amendment is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

A-431 (08-06)

## ENDORSEMENT

## LOSS PAYABLE CLAUSE

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number:

Effective Date:

Any claim under the Physical Damage Coverages of the policy will be paid jointly to the *insured* and the Lienholder in the Declarations.

The Lienholder must notify us if he becomes aware of any increased hazard or change of ownership of the auto or he will lose all of his rights under this policy.

If the *insured* fails to file with us a Proof of *Loss* within 91 days after the loss, the Lienholder must do so within the following 60 days. The policy provisions on time of payment, appraisal and the right to sue us applies both to the Lienholder and the *insured*. We may settle a claim at our option by separate payment to the insured and the Lienholder.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of the payment. If the policy is in effect as to the Lienholder but has been canceled as to the *insured*, the Lienholder must assign the loan to us if we ask and we pay the full amount due.

We will mail notice to the Lienholder at least 10 days before we cancel his interest in the policy.

This endorsement forms a part of your policy. It is effective at 12:01 A.M. local time at your address on the effective date shown above.

### RETAIN THIS COPY FOR YOUR RECORDS

_____
Countersigned by Authorized Representative

UE-316 (4-85)

# GEICO

**Automobile Policy Amendment**

**Alaska**

Policy Number:

Your policy is amended as follows:

## SECTION I-LIABILITY COVERAGES

### DEFINITIONS

The following definitions are revised:

3. **Farm auto** means a truck type vehicle with a Gross Vehicle Weight of 15,000 pounds or less, not used for commercial purposes other than farming.

11. **Utility auto** means a vehicle, other than a farm auto, with a Gross Vehicle Weight of 15,000 pounds or less of the pick-up body, van, or panel truck type not used for commercial purposes.

13. **You** and **your** means the policyholder in the declarations or his or her spouse if a resident of the same household.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

Item 3. is revised as follows:

3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:

    (a) Before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage;

    (b) After the judgment, and until we pay, offer or deposit in court, the amount due under this coverage.

Item 5. is revised as follows:

5. Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an **owned** or **non-owned auto.**

After item 5. the following sentence is added:

We will upon request by an **insured**, provide reimbursement for the following items:

Items 6., 7., and 8. are renumbered and revised as follows:

    (a) Costs incurred by any **insured** for first aid to others at the time of an accident involving an **owned** or **non-owned auto.**

    (b) Loss of earnings up to $50 per day, but not other income, if we request an **insured** to attend hearings and trials.

    (c) All reasonable costs incurred by an **insured** at our request.

### EXCLUSIONS

#### When Section I Does Not Apply

The first paragraph is replaced as follows:

Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies:

The following exclusions are added:

14. **Bodily injury** or property damage that results from nuclear exposure or explosion including resulting fire, radiation, or contamination is not covered.

15. **Bodily injury** or property damage that results from bio-chemical attack or non-natural exposure to bio-chemical agents is not covered.

16. We do not cover any liability assumed under any contract or agreement.

17. We do not cover **bodily injury** or property damage caused by an auto driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

18. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## SECTION II-AUTO MEDICAL PAYMENTS

### EXCLUSIONS

#### When Section II Does Not Apply

The following exclusions are added:

7. There is no coverage for **bodily injury** that results from nuclear exposure or explosion including resulting fire, radiation, or contamination.

8. There is no coverage for **bodily injury** that results from catastrophic bio-chemical attack, or non-natural catastrophic exposure to bio-chemical agents.

EXHIBIT_____ PAGE_____ OF _____

9. We do not cover **bodily injury** caused by an auto driven in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## SECTION III-PHYSICAL DAMAGE COVERAGES

### DEFINITIONS

The following definition is added:

10. **Custom parts or equipment** means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original equipment manufacturer installed, which:

    (a) Are permanently installed or attached; or
    (b) Alter the appearance or performance of a vehicle.

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals or to play back recorded media, other than those which are original equipment manufacturer installed, that are permanently installed in the **owned auto** or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

The second paragraph under **1.** is revised as follows:

    Reimbursement will not exceed $25 per day, or $750 per loss.

Item **3.** is deleted.

### EXCLUSIONS

#### When The Physical Damage Coverages Do Not Apply

Exclusion 10. is revised as follows:

10. There is no coverage for the destruction, impoundment, confiscation, or seizure of a vehicle by governmental or civil authorities due to its use by **you**, a **relative**, or a permissive user of the vehicle in illegal activity.

The following exclusions are added:

11. There is no coverage for **loss** that results from nuclear exposure or explosion including resulting fire, radiation, or contamination.

12. There is no coverage for **loss** that results from catastrophic bio-chemical attack, or non-natural catastrophic exposure to bio-chemical agents.

13. We do not cover **loss** for **custom parts or equipment** unless the existence of those **custom parts or equipment** has been previously reported to us and an endorsement to the policy has been added.

14. There is no coverage for any liability assumed under any contract or agreement.

15. There is no coverage for any **loss** or damage resulting from:

    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal, or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) Any confiscation, seizure, or impoundment of a vehicle by governmental authorities; or
    (d) The sale of an **owned auto.**

16. There is no coverage for any **loss** caused by participation in or preparing for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

### LIMIT OF LIABILITY

Item **2.** is revised as follows:

2. Will not exceed the cost to repair or replace the property, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the **loss**;

The first paragraph of Item **5.** is replaced with the following:

5. For **custom parts or equipment** is limited to the **actual cash value** of the **custom parts or equipment**, not to exceed the **actual cash value** of the vehicle.

The following numbered paragraph is added:

6. For glass repair or replacement, is not to exceed the prevailing competitive price. Although **you** have the right to choose any glass repair facility or location, the limit of liability for **loss** to window glass is the cost to repair or replace such glass but will not exceed the prevailing competitive price. This is the price we can secure from a competent and conveniently located glass repair facility. At **your** request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

EXHIBIT _____ PAGE _____ OF _____

## CONDITIONS

Condition 4., ACTION AGAINST US, the following paragraph is added:

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

## SECTION IV-UNINSURED MOTORISTS COVERAGE AND UNDERINSURED MOTORISTS COVERAGE

### EXCLUSIONS

**When Section IV Does Not Apply**

Exclusion 5. is replaced as follows:

5.  This coverage shall not apply to personal property located on or inside the *insured auto*.

The following exclusions are added:

8.  *Bodily injury* that results from nuclear exposure or explosion including resulting fire, radiation, or contamination is not covered.

9.  *Bodily injury* that results from catastrophic bio-chemical attack or non-natural catastrophic exposure to bio-chemical agents is not covered.

10. This coverage does not apply to any liability assumed under any contract or agreement.

11. This coverage does not apply to damage caused by an *insured's* participation in or preparation for any racing, speed, or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## SECTION V-GENERAL CONDITIONS

The following condition is added:

17. CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Alaska.


We affirm this amendment.


J. C. Stewart
Secretary

O. M. Nicely
President

EXHIBIT __ PAGE __ OF __



**GEICO**
geico.com

TEL: 1-800-841-3000
FAX: 1-800-437-8837

**Policy Number: 4040-68-39-57**

GEICO GENERAL INSURANCE COMPANY
ONE GEICO PLAZA, WASHINGTON, DC 20076-0001

FAMILY AUTOMOBILE POLICY RENEWAL DECLARATIONS

This is a description of your coverage. Please keep for your records.

Item 1: Named Insured and Address

ERIKA ROSE KLINGER
4960 E 43rd Ave APT C-4
ANCHORAGE AK 99508

E-Mail Address: alaskachica50@hotmail.com

| | |
|---|---|
| **Date Issued:** 11-06-07 | |
| Policy Period From 12-10-07 to 06-10-08 | 12:01 a.m. Local time at the address of the named insured. |

The insured vehicle(s) will be regularly garaged in the town and state shown in Item 1, except as noted in the Vehicle Segment.

**Contract Type:** A30AK

CONTRACT AMENDMENTS: ALL VEHICLES - A30AK A54AK

UNIT ENDORSEMENTS: A115 (VEH 1); A431 (VEH 1); UE316 (VEH 1)

|||||||| **IMPORTANT MESSAGES** ||||||||

-Active Duty, Guard, Reserve or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

-You are receiving a $63.70 discount based on your membership in GKIHS .

-Please verify that the coverages you requested are accurately reflected on your policy declaration sheet. Other coverages and limits may also be available. Enclosed you will find a form that will assist you in making any needed changes to the Uninsured Motorist coverages shown.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned auto, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. Please call us at 1-800-841-3000 if you have any questions or wish to purchase additional coverage for customized equipment not included above.

-Confirmation of coverage has been sent to your lienholder and/or additional insured.

GEICO GENERAL INSURANCE COMPANY

| Date Issued: 11-06-07 | | Policy Number: 4040-68-39-57 |
|---|---|---|

| VEHICLE | RATED LOCATION | CLASS |
|---|---|---|
| 1  03  FORD    1FAFP34P33W259295 | ANCHORAGE AK 99508 | A -N -24SFP -L |

| COVERAGES<br>Coverage applies where a premium or 0.00 is shown for the vehicle. | LIMITS OR<br>DEDUCTIBLES | Vehicle 1 | PREMIUMS<br>Vehicle | Vehicle |
|---|---|---|---|---|
| BODILY INJURY LIABILITY<br>  EACH PERSON/EACH OCCURRENCE | $50,000/$100,000 | 148.90 | | |
| PROPERTY DAMAGE LIABILITY | $25,000 | 122.00 | | |
| UNINSURED & UNDERINSURED MOTORISTS<br>  EACH PERSON/EACH OCCURRENCE | $50,000/$100,000 | 35.90 | | |
| UNDERINSURED MOTORIST PROPERTY DAMAGE | $25,000 | 13.80 | | |
| COMPREHENSIVE | $500 DED | 85.10 | | |
| COLLISION | $500 DED | 311.00 | | |
| EMERGENCY ROAD SERVICE | FULL | 6.80 | | |
| RENTAL REIMBURSEMENT | $25 PER DAY<br>$750 MAX | 12.40 | | |

SIX MONTH PREMIUM PER VEHICLE:                        $  735.90

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount
will be shown on your billing statements and is subject to change.

**Premiums for these vehicles are based on the following Discounts and/or Surcharges:**

DISCOUNTS     SPONSORED GROUP (VEH 1); ANTI-LOCK BRAKES (VEH 1);
              ANTI-THEFT DEVICE (VEH 1); 5 YEAR GOOD DRIVING (VEH 1)

| Lienholder Vehicle 1 | Lienholder Vehicle | Lienholder Vehicle |
|---|---|---|
| WELLS FARGO BANK NA | | |

INSURED COPY

## GEICO

ONE GEICO PLAZA
Washington, D. C. 20076-0001
Telephone: 1-800-841-3000

# Alaska
# Family
# Automobile
# Insurance
# Policy

- Government Employees Insurance Company
- GEICO Casualty Company
- GEICO General Insurance Company
- GEICO Indemnity Company

# POLICY INDEX

Page

## SECTION I

**Liability Coverages**
**Your Protection Against Claims From Others**

Definitions.................................................................3
Losses We Will Pay For You...................................3
Additional Payments We Will Make Under The
    Liability Coverages..........................................3
    Legal Expenses And Court Costs
    Bail And Appeal Bonds
    First Aid Expenses
Exclusions: When Section I Does Not Apply...........4
Persons Insured: Who Is Covered ..........................4
Financial Responsibility Laws.................................5
Out Of State Insurance ...........................................5
Limits Of Liability ...................................................5
Other Insurance ......................................................5
Conditions...............................................................5
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Subrogation

## SECTION II

**Automobile Medical Payments Coverage**
**Protection For You And Your Passengers For Medical**
**Expenses**

Definitions .............................................................6
Payments We Will Make.........................................6
Exclusions: When Section II Does Not Apply.........6
Limit Of Liability....................................................6
Other Insurance .....................................................6
Conditions..............................................................6
    Notice
    Two Or More Autos
    Action Against Us
    Medical Reports - Proof And Payment Of Claims
    Subrogation

## SECTION III

**Physical Damage Coverages**
**Your Protection For Loss Of Or Damage To Your Car**

Definitions..............................................................7
Losses We Will Pay .................................................7
    Comprehensive Coverage .....................................7
    Collision Coverage ...............................................8
Additional Payments We Will Make Under The
    Physical Damage Coverages ................................8
    Car Rental If Your Car Is Stolen
Exclusions: When The Physical Damage
    Coverages Do Not Apply .....................................8
Limit Of Liability....................................................8
Other Insurance .....................................................9

Page

Conditions...............................................................9
    Notice
    Two Or More Autos
    Assistance And Cooperation Of The Insured
    Action Against Us
    Insured's Duties In Event Of Loss
    Appraisal
    Payment Of Loss
    No Benefit To Bailee
    Subrogation

## SECTION IV

**Uninsured Motorists Coverage and Underinsured Motor-**
**ists Coverage**
**Your Protection For Injuries Caused By Uninsured, Un-**
**derinsured And Hit And Run Motorists**

Definitions .............................................................10
Losses We Pay .......................................................11
Exclusions: When Section IV Does Not Apply .......11
Limits Of Liability .................................................11
Other Insurance ....................................................12
Subrogation...........................................................12
Conditions.............................................................12
    Notice
    Assistance And Cooperation Of The Insured
    Proof Of Claim - Medical Reports - Proof of Loss
    Payment Of Loss
    Arbitration

## SECTION V

**General Conditions**
**The Following Apply To All Coverages In This Policy**

Territory ................................................................13
Premium................................................................13
Changes.................................................................13
Assignment ...........................................................14
Policy Period.........................................................14
Cancellation By The Insured.................................14
Cancellation By Us ...............................................14
Cancellation By Us Is Limited...............................14
Renewal.................................................................14
Other Insurance ....................................................14
Dividend Provision.................................................14
Declarations ..........................................................15
Fraud And Misrepresentation...............................15
Examination Under Oath.......................................15
Disposal Of Vehicle...............................................15
Terms Of Policy Conformed To Statutes ..............15

## SECTION VI

**Amendments And Endorsements**

Special Endorsement
    United States Government Employees ..............15

A-30AK (6-99)

Whenever, "he," "his," "him," "himself" appears in this policy, you may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with you, the policyholder. Relying on the information you have furnished and the declarations attached to this policy and if you pay your premium when due, we will do the following:

## SECTION I

Liability Coverages
Your Protection Against Claims From Others
Bodily Injury Liability
Property Damage Liability

### DEFINITIONS

The words italicized in Section I of this policy are defined below.

1. *"Auto business"* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2. *"Bodily injury"* means bodily injury to a person, including resulting sickness, disease or death.

3. *"Farm auto"* means a truck type vehicle with a load capacity of 2000 pounds or less, not used for commercial purposes other than farming.

4. *"Insured"* means a person or organization described under PERSONS INSURED.

5. *"Non-owned auto"* means an automobile or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than than 30 days will be considered as furnished for regular use.

6. *"Owned auto"* means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;

    (b) a *trailer* owned by *you*;

    (c) a *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if

        (i) it replaces an *owned auto* as defined in (a) above; or

        (ii) we insure all *private passenger, farm* and *utility autos* owned or leased by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;

    (d) a *temporary substitute auto*.

7. *"Private passenger auto"* means a four-wheel private passenger, station wagon or jeep-type auto.

8. *"Relative"* means a person related to *you* who resides in *your* household.

9. *"Temporary substitute auto"* means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

10. *"Trailer"* means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger, farm* or *utility auto*.

11. *"Utility auto"* means a vehicle, other than a *farm auto*, with a load capacity of 2000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

12. *"War"* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

13. *"You"* means the policyholder named in the declarations and his or her spouse if a resident of the same household.

## LOSSES WE WILL PAY FOR YOU UNDER SECTION I

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *bodily injury*, sustained by a person, and;

2. damage to or destruction of property, arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered lawsuit, except that attorney fee payments shall not exceed the amount that could be awarded in accordance with the percentage schedule for contested cases as specified in Alaska Rule of Civil Procedure 82(b)(1) in a case in which a judgment equal to the liability policy limit or limits applicable to the loss is rendered.

If a judgment is rendered against *you* in excess of *your* liability policy limits, *you* will be responsible for attorney fees awarded in accordance with Alaska Rule of Civil Procedure 82(b)(1) which exceed that which would be

EXHIBIT _____ PAGE _____ OF _____

allowable under the schedule for contested cases if the judgment rendered was within **your** policy limit.

**3.** All interest on that amount of a judgment which is within our limit of liability accruing after the entry of judgment until we have paid, offered or deposited in court that part of the judgment not exceeding the limit of our liability.

**4.** Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of our liability.

**5.** Premiums for bail bonds paid by an **insured** due to traffic law violations arising out of the use of an insured auto, not to exceed $250 per bail bond.

**6.** Costs incurred by any **insured** for first aid to others at the time of an accident involving an insured auto.

**7.** Loss of earnings up to $50 a day, but not other income, if we request an **insured** to attend hearings and trials.

**8.** All reasonable costs incurred by an **insured** at our request.

## EXCLUSIONS

### When Section I Does Not Apply

We will not defend any suit for damage if one or more of the exclusions listed below applies.

**1.** Section I does not apply to any vehicle used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** **Bodily injury** or property damage caused intentionally by or at the direction of an **insured** is not covered.

**3.** We do not cover **bodily injury** or property damage that is insured under a nuclear liability policy.

**4.** **Bodily injury** or property damage arising from the operation of farm machinery is not covered.

**5.** **Bodily injury** to an employee of an **insured** arising out of and in the course of employment by an **insured** is not covered.

However, **bodily injury** of a domestic employee of the **insured** is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

**6.** We do not cover **bodily injury** to a fellow employee of an **insured** if the fellow employee's **bodily injury** arises from the use of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend **you** if suit is brought by a fellow employee against **you** alleging use, ownership or maintenance of an auto by **you**.

**7.** We do not cover an **owned auto** while used by a person (other than **you** or a **relative**) when he is employed or otherwise engaged in the **auto business**.

**8.** A **non-owned auto** while maintained or used by any person is not covered while such person is employed or otherwise engaged in (1) any **auto business** if the accident arises out of that business; (2) any other business or occupation of any **insured** if the accident arises out of that business or occupation, except a **private passenger auto** used by **you** or **your** chauffeur or domestic servant while engaged in such other business.

**9.** We do not cover damage to:

(a) property owned, operated or transported by an **insured**; or

(b) property rented to or in charge of an **insured** other than a residence, private garage or motor vehicle rented by the **insured**.

**10.** We do not cover an auto acquired by **you** during the policy term, if **you** have purchased other liability insurance for it.

**11.** We do not cover:

(a) the United States of America or any of its agencies;

(b) any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

**12.** We do not cover **bodily injury** or property damage that results from the operation of a **non-owned auto** or **temporary substitute auto** that is designed for use principally off public roads that is not registered for use on public roads.

**13.** We do not cover punitive or exemplary damages awarded due to a loss where the **insured** was legally intoxicated or under the influence of illegal narcotics at the time of loss.

## PERSONS INSURED

### Who Is Covered

Section I applies to the following as **insureds** with regard to an **owned auto**:

**1.** **you** and **your relatives**;

**2.** any other person using the auto with **your** permission. The actual use must be within the scope of that permission;

**3.** any other person or organization for his or its liability because of acts or omissions of an **insured** under 1. or 2. above.

EXHIBIT

PAGE        OF

Section I applies to the following with regard to a *non-owned auto*:

1. (a) *you*;
   (b) *your relatives* when using a *private passenger, farm* or *utility auto* or *trailer*.

   Such use by *you* or *your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission;

2. a person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1. above.

   The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT OF STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced to the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.

2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.

3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other insurance against a loss covered by Section I of this policy, we will not owe more than our pro-rata share of the total coverage available.

This policy is excess over any other valid and collectible insurance that applies to a *temporary substitute* or *non-owned auto*. If, however, the *temporary substitute* or *non-owned auto* is a rented motor vehicle, this policy provides primary coverage only if the operator of the *temporary substitute* or *non-owned auto* did not purchase insurance coverage from the person or organization from whom the vehicle was rented.

## CONDITIONS

The following conditions apply to Section I:

1. NOTICE

   As soon as possible after an occurrence, written notice must be given us or our authorized agent stating:

   (a) the identity of the insured;
   (b) the time, place and details of the occurrence;
   (c) the names and addresses of the injured, and of any witnesses; and
   (d) the names of the owners and the description and location of any damaged property.

   If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ASSISTANCE AND COOPERATION OF THE INSURED

   The *insured* will cooperate and assist us, if requested:

   (a) in the investigation of the occurrence;
   (b) in making settlements;
   (c) in the conduct of suits;
   (d) in enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;
   (e) at trials and hearings;
   (f) in securing and giving evidence; and
   (g) by obtaining the attendance of witnesses.

   Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4. ACTION AGAINST US

   No suit will lie against us:

   (a) unless the *insured* has fully complied with all the policy's terms and conditions, and

(b) until the amount of the *insured's* obligation to pay has been finally determined, either:

(i) by a final judgment against the *insured* after actual trial; or

(ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our obligations.

5. **SUBROGATION**

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

**SECTION II**

**Auto Medical Payments**

**Protection For You And Your Passengers For Medical Expenses**

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, *occupying* means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This Coverage applies to:

1. *you* and each *relative* who sustains *bodily injury* caused by accident:

(a) while *occupying* the *owned auto*; or
(b) while *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or
(c) when struck as a pedestrian by an auto or *trailer*.

2. any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while be-

ing used by *you*, a resident of *your household*, or other persons with *your* permission.

**EXCLUSIONS**

**When Section II Does Not Apply**

1. There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence on premises.

3. *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

(a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
(b) a vehicle operated on rails or crawler-treads.

4. There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a workers' compensation law.

5. There is no coverage for *bodily injury* sustained due to *war*.

6. The United States of America or any of its agencies are not covered as an *insured*, a third party beneficiary, or otherwise.

**LIMIT OF LIABILITY**

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

**OTHER INSURANCE**

If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply to this Coverage:

1. NOTICE

As soon as possible after an accident, written notice must be given us or our authorized agent stating:

(a) the identity of the *insured*;
(b) the time, place and details of the accident; and

EXHIBIT ____   PAGE ____   OF ____

(c) the names and addresses of the injured, and of any witnesses.

2. TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ACTION AGAINST US

Suit will not lie against us unless the **insured** has fully complied with all the policy terms.

4. MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

5. SUBROGATION

When we make a payment under this coverage, we will be subrogated (to the extent of payment made by us) to the rights of recovery the injured person or anyone receiving the payments may have against any person or organization. Such person will do whatever is necessary to secure our rights and will do nothing to prejudice them.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

SECTION III

Physical Damage Coverages

Your Protection For Loss Or Damage To Your Car

DEFINITIONS

The definitions of the terms "*auto business*", "*farm auto*", "*private passenger auto*", "*relative*", "*temporary substitute auto*", "*utility auto*", "*you*" and "*war*" under Section I apply to Section III also. Under this Section, the following special definitions apply:

1. "*Actual cash value*" is the replacement cost of the auto or property less *depreciation* or *betterment*.

2. "*Betterment*" is improvement of the auto or property to a value greater than its pre-loss condition.

3. "*Collision*" means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

4. "*Depreciation*" means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness or other causes.

5. "*Insured*" means:

   (a) regarding the *owned auto*:

       (i) *you* and *your relatives*;
       (ii) a person or organization maintaining, using, or having custody of the auto with *your* permission, if his use is within the scope of that permission.

   (b) regarding a *non-owned auto*; *you* and *your relatives*, using the auto, if the actual operation or use is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

6. "*Loss*" means direct and accidental loss of or damage to:

       (a) the auto, including its equipment; or
       (b) other insured property.

7. "*Non-owned auto*" means a *private passenger, farm* or *utility auto* or *trailer* not owned by or furnished for the regular use of either *you* or *your relatives*, except a *temporary substitute auto*. *You* or *your relative* must be using the auto or trailer within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

8. "*Owned auto*" means:

   (a) any vehicle described in this policy for which a specific premium charge indicates there is coverage;

   (b) a *private passenger, farm* or *utility auto* or a *trailer*, ownership of which is acquired by *you* during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more; if

       (i) it replaces an *owned auto* as described in (a) above, or
       (ii) we insure all *private passenger, farm, utility autos* and *trailers* owned or leased by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;

   (c) a *temporary substitute auto*.

9. "*Trailer*" means a trailer designed for use with a *private passenger auto* and not used as a home, office, store, display or passenger trailer.

LOSSES WE WILL PAY FOR YOU

Comprehensive (Excluding *Collision*)

1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision*, to the *owned* or

EXHIBIT _____ PAGE _____ OF _____

*non-owned auto*. This includes breakage of glass and *loss* caused by:

(a) missiles;
(b) falling objects;
(c) fire;
(d) lightning;
(e) theft;
(f) larceny;
(g) explosion;
(h) earthquake;
(i) colliding with a bird or animal;
(j) windstorm;
(k) hail;
(l) water;
(m) flood;
(n) malicious mischief;
(o) vandalism;
(p) riot; or
(q) civil commotion.

No deductible will apply to *loss* caused by fire, lightning, smoke, smudge, or damage sustained while the vehicle is being transported on any conveyance.

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision Coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:

(a) fire;
(b) lightning;
(c) flood;
(d) theft of the entire automobile;
(e) falling objects;
(f) earthquake; or
(g) explosion.

The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

No deductible will apply due to *loss* by fire or lightning.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

## Collision

1. We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

1. We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.

Reimbursement will not exceed $20 per day nor $600 per *loss*.

2. We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

3. We will pay for *loss* to any of the following equipment (including *loss* to accessories and antennas):

(a) car phone;
(b) citizen's band radio;
(c) two-way mobile radio;
(d) scanning monitor receiver; or
(e) device designed for the recording and/or reproduction of sound.

We will pay only if the equipment at the time of *loss*:

(a) is permanently installed in or upon an *owned auto*; and
(b) that auto is insured under the appropriate coverage.

## EXCLUSIONS

### When The Physical Damage Coverages Do Not Apply

1. An auto used to carry passengers or goods for hire is not covered. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. *Loss* due to *war* is not covered.

3. We do not cover *loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

4. There is no coverage for *loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

5. Tires, when they alone are damaged by *collision*, are not covered.

6. *Loss* due to radioactivity is not covered.

7. *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.

8. We do not cover *loss* to any radar or laser detector.

9. We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger*, *farm* or *utility autos*.

10. We do not cover loss to an *owned auto* or *non-owned auto* that results from destruction or confiscation by governmental or civil authorities because *you*, a *relative* or anyone else engaged in illegal activities.

## LIMIT OF LIABILITY

The limit of our liability for *loss*:

1. is the *actual cash value* of the property at the time of the *loss*;

2. will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution

EXHIBIT_____ PAGE____ OF____

in the property's value that is claimed to result from the *loss;*

3.  to personal effects arising out of one occurrence is $200;

4.  to a *trailer* not owned by *you* is $500;

5.  for custom options is limited to the *actual cash value* of equipment, furnishings or finishings (including paint) installed in or upon the vehicle only by the auto factory or an authorized auto dealer and included in the purchase price of the vehicle.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

This policy is excess over any other valid and collectible insurance that applies to a *temporary substitute* or *non-owned auto.* If, however, the *temporary substitute* or *non-owned auto* is a rented motor vehicle, this policy provides primary coverage only if the operator of the *temporary substitute* or *non-owned auto* did not purchase insurance coverage from the person or organization from whom the vehicle was rented.

CONDITIONS

The following conditions apply only to the Physical Damage Coverages:

1.  NOTICE

As soon as possible after a *loss,* written notice must be given us or our authorized agent stating:

(a)  the identity of the *insured;*
(b)  a description of the auto or *trailer;*
(c)  the time, place and details of the *loss;* and
(d)  the names and addresses of any witnesses.

In case of theft, the *insured* must promptly notify the police.

2.  TWO OR MORE AUTOS

If this policy covers two or more autos or *trailers,* the limit of coverage and any deductibles apply separately to each.

3.  ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us, if requested:

(a)  in the investigation of the *loss;*
(b)  in making settlements;
(c)  in the conduct of suits;

(d)  in enforcing any right of subrogation against any legally responsible person or organization;
(e)  at trials and hearings;
(f)  in securing and giving evidence; and
(g)  by obtaining the attendance of witnesses.

4.  ACTION AGAINST US

Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

5.  *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

(a)  Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
(b)  File with us, within 91 days after *loss,* his sworn proof of loss including all information we may reasonably require.
(c)  At our request, the *insured* will exhibit the damaged property.

6.  APPRAISAL

If we and the *insured* do not agree on the amount of *loss,* either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss.* In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss.* If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss.* We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

7.  PAYMENT OF *LOSS*

We may at our option:

(a)  pay for the *loss;* or
(b)  repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8.  NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

EXHIBIT _____ PAGE _____ OF _____

**9. SUBROGATION**

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

## SECTION IV

### Uninsured Motorists Coverage and Underinsured Motorists Coverage

Protection For *You* And *Your* Passengers For Injuries Caused By Uninsured, Underinsured And Hit-And-Run Motorists

### DEFINITIONS

The definitions of terms for Section I apply to Section IV except for the following special definitions:

**1.** *"Hit And Run Motor Vehicle"* means a motor vehicle causing *bodily injury* to an *insured* or property damage to an *insured auto*, through physical contact with him or with an auto he is *occupying* at the time of the accident and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

    (a) reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

    (b) files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and

    (c) makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

**2.** *"Insured"* means:

    (a) *you*;

    (b) *your relatives* if residents of *your* household;

    (c) any other person while *occupying* an *insured auto*;

    (d) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

If there is more than one *insured*, our limits of liability will not be increased.

**3.** *"Insured Auto"* is an auto:

    (a) described in the declarations and covered by the bodily injury and property damage liability coverage of this policy;

    (b) temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

    (c) operated by *you*.

But the term *"insured auto"* does not include:

    (i) an auto used to carry passengers or goods for hire except in a car pool;

    (ii) an auto being used without the owner's permission; or

    (iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

**4.** *"Occupying"* means in, upon, getting into or getting out of.

**5.** *"State"* includes the District of Columbia, the territories and possessions of the United States and the Provinces of Canada.

**6.** *"Uninsured Motor Vehicle"* means:

    (a) a motor vehicle which has no bodily injury and property damage liability bond, policy of insurance or cash or securities on file to cover *bodily injury*, at the time of the accident; or

    (b) a motor vehicle, including a farm-type tractor or equipment while it is being used on public roads, which has bodily injury and property damage liability insurance in effect at the time of the accident, but the insurer of the vehicle, the legally authorized self insured owner or operator of the vehicle, or the government entity that owns the vehicle legally denies coverage or becomes insolvent; or

    (c) a *hit and run motor vehicle* as defined.

The term *"uninsured motor vehicle"* does not include:

    (a) an *insured auto*;

    (b) a motor vehicle owned or operated by a legally authorized self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law, except as shown in part (b) under the definition of *"uninsured motor vehicle"* above;

    (c) a motor vehicle owned by the United States of America, any other national government, a *state*, or a political sub-division of any such government or its agencies, except as shown in part (b) under the definition of *"uninsured motor vehicle"* above;

    (d) a land motor vehicle or *trailer* operated on rails or tracks or located for use as a residence or premises; and

    (e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads, except as shown in part (b) under the definition of *"uninsured motor vehicle"* above.

EXHIBIT _____ PAGE _____ OF _____

7. **"Underinsured motor vehicle"** means a motor vehicle licensed for highway use with respect to the ownership, operation, maintenance, or use for which there is a bodily injury or property damage insurance policy or bond applicable at the time of the accident and the amount of insurance or bond is less than the amount the **insured** is legally entitled to recover for **bodily injury** or property damage from the owner or operator of the **underinsured motor vehicle**.

## LOSSES WE PAY

We will pay damages for **bodily injury**, caused by an accident, which the **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle**, an **underinsured motor vehicle**, or a **hit and run motor vehicle** arising out of the ownership, maintenance or use of that vehicle.

We will pay for property damages to an **insured auto**, caused by an accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle, underinsured motor vehicle**, or a **hit and run motor vehicle** arising out of the ownership, maintenance or use of that vehicle.

This coverage will not apply to **bodily injury** of an **insured** or property damage of an **insured** until the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments, or settlements. Nor will this coverage apply if the **insured** has resolved a claim and impaired our right to recover our payment from any person or organization from whom the **insured** is legally entitled to recover.

## EXCLUSIONS

### When Section IV Does Not Apply

1. This coverage does not apply to **bodily injury** or to property damage sustained by any **insured** while **occupying** or through being struck by an auto owned by **you** or a **relative** that is not an **insured auto**.

2. This coverage shall not apply to the benefit of any workmen's compensation carrier, disability benefits carrier or any person qualified as a legally authorized self-insurer under any workmen's compensation or disability law or similar law.

3. This coverage shall not apply to the benefit of any property insurer.

4. This coverage does not apply to the first two hundred and fifty dollars of the total amount of all property damage as the result of any one accident.

5. his coverage shall not apply to the loss of use to an **insured auto**.

6. This coverage shall not apply to personal property located on or inside the **insured auto**.

7. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## LIMITS OF LIABILITY

Regardless of the number of **insured autos** or **trailers** to which this policy applies:

1. The limit of liability for Uninsured and Underinsured Motorist coverage shown in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to **bodily injury** to one person as the result of one accident.

2. The limit of liability for Uninsured and Underinsured Motorist coverage shown in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all damages, including damages for care and loss of services, because of **bodily injury** to two or more persons as the result of one accident.

3. The limit of liability for Uninsured and Underinsured Motorist Property Damage coverage shown in the declarations as applicable to "each accident" is the total limit of our liability for all damages because of property damage to all property of one or more **insureds** as the result of any one accident. This limit is subject to the provisions of Exclusion 5.

4. The maximum limit of liability of the insurance carrier under the Uninsured/Underinsured Motorist coverage required to be offered shall be the lesser of:

   (a) The difference between the amount of the **insured's** damages for **bodily injury** and property damage and the amount paid to the **insured** by or for a person who is or may be legally liable for the damages; and

   (b) The applicable limit of liability of the Uninsured and Underinsured Motorist coverage.

5. When coverage is afforded to two or more autos, the limits of liability for Uninsured/Underinsured Motorist coverage shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

When coverage is afforded for Uninsured or Underinsured Motorist coverage under more than one motor vehicle policy issued by the same insurer, the maximum amount payable is limited to the highest limit of any one coverage under the policy.

6. Any amount payable under the Uninsured/Underinsured Motorist coverage shall be excess to any amount payable under automobile bodily injury, death or medical payments coverage, or as worker's compensation benefits and may not duplicate amounts paid or payable under valid and collectible automobile bodily injury, death, or medical payments coverage or as worker's compensation benefits.

EXHIBIT _____ PAGE _____ OF _____

7.  This coverage will not apply to *bodily injury* of an *insured* or property damage of an *insured* until the limits of liability of all bodily injury and property damage liability bonds and policies that apply have been used up by payments, judgments, or settlements.

8.  This section limits coverage for attorney fees under Alaska Rule of Civil Procedure 82. In any suit in Alaska in which a claim under this coverage is asserted, our obligation under the coverage to pay attorney's fees taxable as costs is limited as follows:

Alaska Rule of Civil Procedure 82 provides that an injured person may recover a portion of his attorney's fees from the person, party or entity legally responsible for his injury. The amount that may be collected is set forth in Alaska Rule of Civil Procedure 82. As a part of this coverage, attorney's fees that an *insured* may collect under Alaska Rule of Civil Procedure 82 are subject to the following limitation:

We will not pay that portion of any attorney's fee that is in excess of the fees calculated by applying the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) to the limit of liability of this coverage. This limitation means that potential attorney's fees that could be awarded against an uninsured or underinsured motorist may not be recovered in full.

## OTHER INSURANCE

If an *insured* is entitled to Uninsured or Underinsured Motorist coverage under more than one coverage when two or more vehicles are insured under one policy, the maximum amount payable may not exceed the highest limit of any one coverage under the policy.

If a person as the named insured is entitled to Uninsured or Underinsured Motorist coverage under more than one motor vehicle policy issued by the same insurer, the maximum amount payable may be limited to the highest limit of any one coverage under the policies.

If an *insured* is entitled to Uninsured or Underinsured Motorist coverage under more than one policy providing motor vehicle liability coverage, payments will be made in the following order of priority, subject to the limit of liability of each applicable policy or coverage:

1.  A policy or coverage covering a motor vehicle *occupied* by the injured person or a policy or coverage covering a pedestrian as a named insured.

2.  A policy or coverage covering a motor vehicle *occupied* by the injured person as an *insured* other than as a named insured.

3.  A policy or coverage not covering a motor vehicle *occupied* by the injured person but covering the injured person as a named insured.

4.  A policy or coverage not covering a motor vehicle *occupied* by the injured person but covering the injured person as an *insured* other than as a named insured.

5.  A policy or coverage covering, as excess, umbrella, or similar insurance, a motor vehicle *occupied* by the injured person or a policy or coverage covering, as excess, umbrella, or similar insurance, a pedestrian as a named insured.

6.  A policy or coverage not covering a motor vehicle *occupied* by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as the named insured.

7.  A policy or coverage not covering a motor vehicle *occupied* by the injured person but covering, as excess, umbrella, or similar insurance, the injured person as an *insured* other than as a named insured.

## SUBROGATION

If we make payment under the policy and the *insured* had or has a right to recover damages from another, we shall be subrogated to that right. This means that we will have the right to seek recovery of any payment we make from any person, party or entity who may be held responsible. However our right to recover is secondary to the *insured's* right to be compensated fully for his damages.

The *insured* will do nothing to prejudice our rights to pursue subrogation, and will cooperate with us to enforce these rights.

## CONDITIONS

The following conditions apply only to the Uninsured Motorists coverage and Underinsured Motorists coverage:

1.  NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

(a)  the identity of the *insured*;
(b)  the time, place and details of the accident;
(c)  the names and addresses of the injured, and of any witnesses.

If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2.  PROOF OF CLAIM - MEDICAL REPORTS - PROOF OF LOSS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment and other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by us, when and as often as we may reasonably require,

EXHIBIT_____ PAGE_____ OF_____

at which time the *insured* or other persons, may have their attorney present. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. At our request, the *insured* shall authorize us to obtain medical reports and copies of records. If he is incapacitated or dead, his legal representative shall provide the authorization.

In the event of a property damage loss, the *insured* shall protect the auto from further loss. Further loss due to failure to protect will not be covered. We will pay for reasonable expenses incurred for the protection of the auto.

The *insured* or other person making a property damage claim shall file a proof of loss with us as soon as practicable. The proof of loss shall be a sworn statement as to the interest of the *insured* and anyone else in the property, any encumbrances upon the property, actual cash value at the time of loss, amount, place, cause and time of loss, and description and amounts of all other insurance covering this property. Upon our request, the *insured* will show us the damaged property.

3. PAYMENT OF LOSS

Any amount due is payable:

(a) to the *insured*, or
(b) to his parent or guardian, if the *insured* is a minor, or
(c) to his surviving spouse, if the *insured* is deceased; otherwise
(d) to a person authorized by law to receive the payment, or to a person legally entitled to recover payment for the damages.

We may, at our option, pay any amount due in accordance with (d) above.

4. ARBITRATION

Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:

(a) the extent to which the *insured* is legally entitled to recover against an owner or operator of an *uninsured motor vehicle* or *underinsured motor vehicle* (i.e., issues of liability); or
(b) the amount of damages sustained by the *insured*

may be arbitrated. However, neither the *insured* nor we will be required to arbitrate unless arbitration is expressly required by state law. Unless so required, binding arbitration will not be used to resolve disputes regarding policy interpretation, the existence of this coverage in a particular policy, or the application of this coverage to a particular claim or claimant.

We will be obligated to pay no more than the applicable policy limits for this coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this coverage as defined in this policy.

Arbitration will not deprive any *insured* of the right to bring action against us to recover any sums due under the terms of the policy. Arbitration will not deprive the courts of this state of jurisdiction against us.

Unless otherwise required by state law, the method, manner and format of any arbitration process will be subject to agreement by *you* and us. All expenses and fees, not including counsel fees or adjuster fees, incurred because of arbitration shall be paid as determined by the neutral arbitrator. Each party may be represented by an attorney at an arbitration.

If a party makes a timely application to the court, an arbitration award may be modified, corrected or vacated as provided by Alaska law.

SECTION V

General Conditions

These conditions apply to all Coverages in this policy.

1. TERRITORY

This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. PREMIUM

When you dispose of, acquire ownership of, or replace a *private passenger, farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

The premium for each auto is based on the information we have in *your* file. *You* agree:

(a) that we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.
(b) that *you* will cooperate with us in determining if this information is correct and complete.
(c) that *you* will notify us of any changes in this information.

EXHIBIT _____ PAGE _____ OF _____

Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

### 4. ASSIGNMENT

*Your* rights and duties under this policy may not be assigned without our written consent.

If *you* die, this policy will cover *your* surviving spouse, if covered under the policy prior to *your* death. Until the expiration of the policy term, we will also cover:

(a) the executor or administrator of *your* estate, but only while operating an *owned auto* and only while acting within the scope of his duties; and

(b) any person having proper temporary custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of *your* estate.

### 5. POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and *your* acceptance prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at *your* address stated in the declarations.

### 6. CANCELLATION BY THE *INSURED*

*You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

### 7. CANCELLATION BY US

We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 20 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

(b) 30 days in advance in all other cases.

EXCEPTION: 10 days in advance if cancellation is for suspension or revocation of a driver's license.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

### 8. CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal policy, we will not cancel except for any of the following reasons:

(a) *You* do not pay the initial premium on other than a renewal policy or any additional premiums for this policy, or fail to pay any premium installment when due to us or our agent.

(b) *Your* driver's license, or that of any customary operator has been under suspension or revocation during the policy period or, if a renewal policy, during the policy period or the 180 days immediately preceding its' effective date. This does not apply to a driver's license revocation under AS 28.15.183 or 28.15.185 for possession or consumption of alcohol, in a situation where the person while under 21 years of age was not driving, and was in violation of AS 04.16.050 or a municipal ordinance with substantially similar elements.

(c) You change your principal residence to a state where we do not issue new or renewal automobile insurance policies.

We have the right to modify the Comprehensive Coverage under Section III by including a deductible of not more than $100.

### 9. RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to *you*, at the address shown in this policy, at least 20 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a) *You* do not pay any premium as we require to renew this policy.

(b) *You* have informed us or our agent that *you* wish the policy to be cancelled or not renewed.

(c) *You* do not accept our offer to renew or *you* refuse to provide us with renewal classification and rating information as we may require.

### 10. OTHER INSURANCE

If other insurance is obtained on *your* insured auto to replace this insurance, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

### 11. DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the Company as determined by its Board of Directors from time to time.

EXHIBIT _____ PAGE _____ OF _____

12. DECLARATIONS

By accepting this policy, **you** agree that:

(a) the statements in **your** application and in the declarations are **your** agreements and representations;

(b) this policy is issued in reliance upon the truth of these representations; and

(c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

13. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

(a) at the time of application; or

(b) at any time during the policy period; or

(c) in connection with the presentation or settlement of a claim.

14. EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require. Any person submitting to examination under oath as required by this Condition is entitled to have his own counsel present during such examination.

15. DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if you sell or relinquish ownership of an **owned auto**, any coverage provided by this policy for that vehicle will terminate on the date **you** do so.

16. TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Alaska are amended to conform to those statutes.

## SECTION VI - AMENDMENTS AND ENDORSEMENTS

1. SPECIAL ENDORSEMENT
UNITED STATES GOVERNMENT EMPLOYEES

A. Under the Property Damage coverage of Section I, we provide coverage to United States Government employees, civilian or military, using:

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or

2. Rented motor vehicles used for United States Government business,

when such use is with the permission of the United States Government. Subject to the limits described in paragraph B. below, we will pay sums **you** are legally obligated to pay for damage to these vehicles.

B. The following limits apply to this Coverage:

1. A $100 deductible applies to each occurrence.

2. For vehicles described in A.1. above, our liability shall not exceed the lesser of the following:

a. the **actual cash value** of the property at the time of the occurrence; or

b. the cost to repair or replace the property, or any of its parts, with other of like kind and quality; or

c. two months basic pay of the **insured**; or

d. the limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2. above, our liability shall not exceed the lesser of the following:

a. the **actual cash value** of the property at the time of the occurrence; or

b. the cost to repair or replace the property, or any of its parts with other of like kind and quality; or

c. the limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

J. C. Stewart
Secretary

O. M. Nicely
President

GOVERNMENT EMPLOYEES INSURANCE COMPANY
GEICO CASUALTY COMPANY
GEICO GENERAL INSURANCE COMPANY
GEICO INDEMNITY COMPANY
HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-3799

EXHIBIT_____ PAGE_____ OF_____

**NOTICE**

**THIS POLICY LIMITS COVERAGE FOR ATTORNEY FEES UNDER ALASKA RULE OF CIVIL PROCEDURE 82**

In any suit in Alaska in which we have a right or duty to defend an insured in addition to the limits of liability, our obligation under the applicable coverage to pay attorney fees taxable as costs against the insured is limited as follows:

Alaska Rule of Civil Procedure 82 provides that if you are held liable, some or all of the attorney fees of the person making a claim against you must be paid by you. The amount that must be paid by you is determined by Alaska Rule of Civil Procedure 82. We provide coverage for attorney fees for which you are liable under Alaska Rule of Civil Procedure 82 subject to the following limitation:

We will not pay that portion of any attorney's fees that is in excess of the fees calculated by applying the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) to the limit of liability of the applicable coverage.

*This limitation means the potential costs that may be awarded against you as attorney fees may not be covered in full. You will have to pay any attorney fees not covered directly.*

For example, the attorney fees provided by the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) are:

    20% of the first $25,000 of a judgment;
    10% of the amounts over $25,000 of a judgment.

Therefore, if a court awards a judgment against you in the amount of $125,000, in addition to that amount, you would be liable under Alaska Rule of Civil Procedure 82(b)(1) for attorney fees of $15,000, calculated as follows:

| | |
|---|---|
| 20% of $ 25,000 | $ 5,000 |
| 10% of $100,000 | $10,000 |
| Total Award $125,000 | Total Attorney Fees $15,000 |

If the limit of liability of the applicable coverage is $100,000, we would pay $100,000 of the $125,000 award, and $12,500 for Alaska Rule of Civil Procedure 82(b)(1) attorney fees, calculated as follows:

| | |
|---|---|
| 20% of $ 25,000 | $ 5,000 |
| 10% of $ 75,000 | $ 7,500 |
| Total Limit of Liability $100,000 | Total Attorney Fees Covered $12,500 |

You would be liable to pay, directly and without our assistance, the remaining $25,000 in liability plus the remaining $2,500 for attorney fees under Alaska Rule of Civil Procedure 82 not covered by this policy.

EXHIBIT _____ PAGE _____ OF _____

# ALASKA MOTOR VEHICLE COLLISION REPORT

**Crash Information** (One choice per field unless otherwise noted. Other* should be explained in narrative)

| Total# Units: 2 | Crash Date: 03/28/2008 | Crash Time (24 hr): 18:04 | Crash Occurred in (City/Borough): Anchorage | Temp: 35 | Fld Spd: 45 | EMS Run #: |
|---|---|---|---|---|---|---|

**Crash Day:**
- [ ] 01 Mon
- [X] 05 Fri
- [ ] 02 Tue
- [ ] 06 Sat
- [ ] 03 Wed
- [ ] 07 Sun
- [ ] 04 Thu

**N:** [X] 01 Y [ ] 02 N
**W:** [ ] 01 Y [X] 02 N

**Photos Taken:** [X] 01 Y [ ] 02 N

**Non-vehicular Property Damage:** [ ] 01 Y [ ] 03 Unk [X] 02 N

**Roadway Junction/Type:**
- [ ] 01 Crossover
- [ ] 02 Driveway
- [ ] 03 Not a junction
- [ ] 04 On Ramp
- [ ] 05 Off Ramp
- [ ] 06 Railway crossing
- [ ] 07 Roundabout
- [ ] 08 T-intersection
- [ ] 09 Y-intersection
- [ ] 10 4-way intersection
- [ ] 11 5-point or more
- [X] 12 Other *
- [ ] 13 Unk

**Weather:**
- [ ] 01 Blowing sand, soil, dirt, snow
- [X] 02 Clear
- [ ] 03 Cloudy
- [ ] 04 Fog/Smoke
- [ ] 05 Ice Fog
- [ ] 06 Rain
- [ ] 07 Sleet, hail (freezing rain)
- [ ] 08 Severe crosswinds
- [ ] 09 Snow
- [ ] 10 Other *
- [ ] 11 Not Reported
- [ ] 12 Unk

**Roadway Character:**
- [X] 01 Straight/Lvl
- [ ] 02 Straight/Grd
- [ ] 03 Straight/Hlcrst
- [ ] 04 Curve/Lvl
- [ ] 05 Curve/Grd
- [ ] 06 Curve/Hlcrst
- [ ] 07 Unk

**Road Surface:**
- [X] 01 Dry
- [ ] 02 Ice
- [ ] 03 Water
- [ ] 04 Sand, mud dirt, oil, gravel
- [ ] 05 Slush
- [ ] 06 Snow
- [ ] 07 Wet
- [ ] 08 Other*

**Lighting:**
- [ ] 01 Dark-lighted roadway
- [ ] 02 Dark-roadway not lighted
- [ ] 03 Dark-unknown lighting
- [X] 04 Daylight
- [ ] 05 Twilight
- [ ] 06 Other *
- [ ] 07 Not Reported
- [ ] 08 Unk

**Location Control:** _____ **Ref Pt:** _____ (Law enforcement use only):

**Name of Street or Highway:** E TUDOR RD
[ ] miles [ ] feet [X] at int. w/
[ ] N [ ] E [ ] S [ ] W
**Cross Street, Bridge, etc:** VANCE DR

**Crash Description/Violation:**   **Emergency Vehicle:** No   **Crash Diagram:**

Hit and Run [X]   **Original**   Cross Reference #: _____

**Narrative**

On 3/28/2008, at approximately 1900 hours, I responded to the intersection of E Tudor Rd. and Vance Dr. for a report of a traffic collision.

V1 was traveling west on Tudor Rd. and made a right turn (north) onto Vance Dr. V1 was traveling too fast to make the right turn and collided with V2, which was stopped on Vance Dr., waiting to turn onto Tudor Rd. The driver of V1 ran away before APD arrived.

**Indicate North:**

NOT TO SCALE

VANCE DR

Unit 2

Unit 1

TUDOR RD

**Violation Section (s):**
Unit 1:
Unit 2:

**Ticket Description:**
Unit 1:
Unit 2:

**Location of First Sequence of Events:**
- [ ] 01 Bike Lane
- [ ] 02 Gore
- [ ] 03 Median
- [ ] 04 Outside trafficway
- [ ] 05 Parking lot
- [ ] 06 Roadside
- [X] 07 Roadway
- [ ] 08 Shared use paths
- [ ] 09 Shoulder
- [ ] 10 Unk

**First Sequence of Events, Collision:**
- [ ] 01 Aircraft
- [ ] 02 Animal
- [ ] 03 Bicyclist
- [ ] 04 Bridge/Overpass
- [ ] 05 Bridge rail
- [ ] 06 Crash cushion
- [ ] 07 Culvert
- [ ] 08 Curb/Wall
- [ ] 09 Ditch
- [ ] 10 Embankment
- [ ] 11 Fence
- [ ] 12 Guard rail face
- [ ] 13 Guard rail end
- [ ] 14 Light support
- [ ] 15 Machinery
- [ ] 16 Mail box
- [ ] 17 Median Barrier
- [ ] 18 Moose
- [ ] 19 Parked vehicle
- [ ] 20 Pedestrian
- [ ] 21 Sidewalk
- [ ] 22 Sign
- [ ] 23 Snowberm
- [ ] 24 Traffic signal pole
- [ ] 25 Train
- [ ] 26 Tree/Shrub
- [ ] 27 Utility pole
- [ ] 28 Veh in transit
- [ ] 29 Veh-rear end
- [ ] 30 Veh-head on
- [X] 31 Veh-angle
- [ ] 32 Other fixed object

**First Sequence of Events, Non-collision:**
- [ ] 33 Cargo loss/shift
- [ ] 34 Crossed median/centerline
- [ ] 35 Downhill runaway
- [ ] 36 Equipment failure
- [ ] 37 Explosion/fire
- [ ] 38 Immersion
- [ ] 39 Jackknife
- [ ] 40 Overturn
- [ ] 41 Ran off road
- [ ] 42 Separation of units
- [ ] 43 Other*
- [ ] 44 Unk

[ ] Check if Supplemental Diagram

**Officer/Agency Information**

| Officer Name: Davison, Derek_ | Officer PermID: 29886 | Agency: APD | Reviewing Officer Perm ID: 29230 | Review Date: 03/30/2008 |
|---|---|---|---|---|

EXHIBIT **B** PAGE _____ OF _____

# ALASKA MOTOR VEHICLE COLLISION REPORT

| DMV# | Incident/Case # 08-14210 _ |
|---|---|

**Driver Information** (One choice per field unless otherwise noted - Other * should be explained in narrative)

| Unit #: 1 | Driver Name (Last, First, MI): | Person Type: Driver | Sex: [X] 01 M □ 02 F | DOB: | Contact Phone: |
|---|---|---|---|---|---|

| OL/ID #: | O.L.State/State: | License Class: □ 01 CDL-A □ 02 CDL-B □ 03 CDL-C □ 04 CDL-IC □ 05 D □ 06 MI □ 07 M2 □ 08 IM □ 09 IP | Ejected: [X] 01 Y □ 02 N □ 03 P □ 04 Unk  Extricated: □ 01 Y [X] 02 N □ 03 Unk |
|---|---|---|---|

| Mailing Address: | City: | State: | Zip: | NFR: □ 01 Y □ 02 N | Ins Coverage: □ 01 Y □ 02 N |
|---|---|---|---|---|---|

| Physical Address: | City: | State: | Zip: | Ins Company: |
|---|---|---|---|---|

**Environment Circumstances:**
- □ 01 Glare
- □ 02 Obstruction
- □ 03 Weather
- □ 04 None
- □ 05 Other *
- [X] 06 Not Reported

**Injury Status:**
- □ 01 Fatal
- □ 02 Incapacitating *
- □ 03 Non-incapacitating *
- □ 04 Possible
- □ 05 None
- [X] 06 Not Reported
- □ 07 Unk

**Driver Restraint/Airbag (4 choices max):**
- □ 01 Not used
- □ 02 Not insld
- □ 03 Helmet
- [X] 04 Lap/Shldr
- □ 05 Lap only
- □ 06 Shldr only
- □ 07 Prp Child Rst
- □ 08 Imp Child Rst
- □ 09 A/bag Dplyd
- □ 10 A/bag not Dplyd
- □ 11 A/bag switch off
- □ 12 Side bag Dplyd
- □ 13 Not Reported
- □ 14 Unk

**Alcohol/Drugs Suspected:**
- □ 01 None □ 02 Alcohol □ 03 Drugs □ 04 Both

**Test Given:**
- □ 01 Blood □ 02 Breath □ 03 Not Given □ 04 Refused

**BAC Level:**

**Transported:**
- □ 01 Y [X] 02 N

**Human Circumstances (2 choice max):**
- □ 01 No improper driving
- □ 02 Backing unsafely
- □ 03 Cell phone use
- □ 04 Disregard traffic control device other than signal
- □ 05 Driver inattention
- □ 06 Driver inexperience
- □ 07 Drove off road
- □ 08 Emotional
- □ 09 Failure to yield
- □ 10 Fell asleep
- □ 11 Following too closely
- □ 12 Illness
- □ 13 Improper lane usage/change
- □ 14 Improper passing
- □ 15 Improper turn
- □ 16 Loss of consciousness
- □ 17 Passenger distraction
- □ 18 Pedestrian error/confusion
- □ 19 Physical disability
- □ 20 Red light violation
- □ 21 Stop sign violation
- □ 22 Taking prescription meds
- □ 23 Unsafe speed
- □ 24 Wrong side/way
- □ 25 Other*
- □ 26 Unk

**Transported By:**
- □ 01 Air Ambulance
- □ 02 Airplane
- □ 03 EMS
- □ 04 Helicopter
- □ 05 Police
- □ 06 Private vehicle
- □ 07 Unk
- [X] 08 N/A

**Transported To:**
- □ 01 Clinic
- □ 02 Hospital
- □ 03 Mortuary
- □ 04 Residence
- □ 05 Unk
- [X] 06 N/A

## Vehicle 1 Information

**Vehicle Damage:**
- □ 01 None/Minor
- □ 02 Functional
- [X] 03 Disabling
- □ 04 Totaled

**No. of Occupants:** 2

□ 05 Unk

| Vehicle Owner Name (Last, First, MI): | | Contact Phone: |
|---|---|---|
| Mailing Address: | City: | State: | Zip: |



P - primary
S - secondary

FRONT / REAR diagram: positions 01, 02, 03, 04, 05, 06, 07, 08, 09 — P at front, 09 center

| Damage Estimate: [X] Over $501 | VIN: 1GKEK63U34J151937 | License Plate #: UNK | State: AK |
|---|---|---|---|

| Under Carriage Damage: □ 01 Y [X] 02 N | Veh Year: | Make: General Motors Corp. | Model: Yukon | Color: BLK |
|---|---|---|---|---|

| Direction of Travel: □ 01 North □ 02 South □ 03 East [X] 04 West □ 05 Unk | Veh Towed: □ 01 Y [X] 02 N □ 03 Unk |
|---|---|
| | Towed By: |
| Unit Description: GMC YUKON | |

**Vehicle Configuration (non-commercial only):**
- □ 01 Dog Sled
- □ 02 Light truck (only 4 tires)
- □ 03 Motorhome
- □ 04 Motorcycle
- □ 05 Off highway vehicle
- [X] 06 Passenger car
- □ 07 Pedalcycle
- □ 08 Pedestrian
- □ 09 Other *
- □ 10 Unk

**Vehicle Configuration (commercial only):**
- □ 01 Single-unit (2-axles)
- □ 02 Single unit (3+ axles)
- □ 03 Truck/trailer
- □ 04 Tractor (bobtail)
- □ 05 Tractor/semi-trailer
- □ 06 Tractor/doubles
- □ 07 Tractor/triples
- □ 08 Van/enclosed box
- □ 09 Unk heavy truck
- □ 10 Other *
- □ 11 Unk

**Body Type (2 choice max, commercial only):**
- □ 01 Auto transporter
- □ 02 Bus (15 or more seats)
- □ 03 Bus (7-15 seats)
- □ 04 School bus
- □ 05 Cargo tank
- □ 06 Concrete mixer
- □ 07 Dump
- □ 08 Flatbed
- □ 09 Garbage/refuse
- □ 10 Grain/chips/gravel
- □ 11 Pole
- □ 12 Other *
- □ 13 Unk

**Vehicle Defects:**
- □ 01 Accelerator defective
- □ 02 Brakes defective
- □ 03 Headlights defective
- □ 04 Other lighting defective
- □ 05 Oversized vehicle
- □ 06 Steering failure
- □ 07 Tire failure/inadequate
- □ 08 Tow hitch defective
- □ 09 Windshield damaged
- □ 10 None
- □ 11 Other*
- [X] 12 Unk

**Vehicle Action:**
- □ 01 Avoiding objects in road
- □ 02 Backing
- □ 03 Changing lanes
- □ 04 Entering traffic lane
- □ 05 Leaving traffic lane
- □ 06 Making U-turn
- □ 07 Merging
- □ 08 Out of control
- □ 09 Passing
- □ 10 Parked
- □ 11 Skidding
- □ 12 Slowing
- □ 13 Starting in traffic
- □ 14 Stopped
- □ 15 Straight ahead
- [X] 16 Turning right
- □ 17 Turning left
- □ 18 Other *
- □ 19 Unk

**Roadway Circumstances:**
- □ 01 Debris
- □ 02 Inoperative traffic device
- □ 03 Missing traffic device
- □ 04 Obscured traffic device
- □ 05 Obstruction in roadway
- □ 06 Shoulder
- □ 07 Road surface condition
- □ 08 Ruts, holes, bumps
- □ 09 School zone
- □ 10 Work zone
- [X] 11 Worn, polished
- □ 12 None
- □ 13 Other *
- □ 14 Unk

**Traffic Control:**
- □ 01 Flashing signal
- □ 02 No controls
- □ 03 Road const signs
- □ 04 RR crossing device
- □ 05 School zone signs
- □ 06 Stop Sign
- □ 07 Traffic control signal
- □ 08 Warning signs
- □ 09 Yield sign
- □ 10 Officer/flagman/guard
- □ 11 Other *
- □ 12 Unk

### Commercial Vehicle Information

(If crash involves a commercial vehicle, complete this section and forward a copy of report to CVE unit, 12050 Industry Way-Bldg Q-Suite #6, Anch, AK 99515)

| Carrier Name: | Gross Weight (lbs): |
|---|---|
| Address: | Carrier ID#: |
| City: | State: | Zip: | Contact Phone: |

**Carrier ID Source:**
- □ 01 Driver/Vehicle
- □ 02 Log Book
- □ 03 Shipping Papers
- □ 04 Trip Manifest

**Issuing Authority:**
- □ 01 US DOT
- □ 02 ICC
- □ 03 AKS

**Placard:**
- □ 01 Y
- □ 02 N
- □ 03 Unk

**HazMat Released:**
- □ 01 Y
- □ 02 N
- □ 03 Unk

**Second Sequence of Events, Collision:**
- □ 01 Aircraft
- □ 02 Animal
- □ 03 Bicyclist
- □ 04 Bridge/Overpass
- □ 05 Bridge rail
- □ 06 Crash cushion
- □ 07 Culvert
- □ 08 Curb/Wall
- □ 09 Ditch
- □ 10 Embankment
- □ 11 Fence
- □ 12 Guard rail face
- □ 13 Guard rail end
- □ 14 Light support
- □ 15 Machinery
- □ 16 Mail box
- □ 17 Median barrier
- □ 18 Moose
- □ 19 Parked vehicle
- □ 20 Pedestrian
- □ 21 Sideswipe
- □ 22 Sign
- □ 23 Snow berm
- □ 24 Traffic signal pole
- □ 25 Train
- □ 26 Tree/shrub
- □ 27 Utility pole
- □ 28 Veh-in transit
- □ 29 Veh-rear end
- □ 30 Veh-head on
- □ 31 Veh-angle
- □ 32 Other fixed object

**Second Sequence of Events, Non-Collision:**
- □ 33 Cargo loss/shift
- □ 34 Crossed median/centerline
- □ 35 Downhill runaway
- □ 36 Equipment failure
- □ 37 Explosion/fire
- □ 38 Immersion
- □ 39 Jacknife
- □ 40 Overturn
- □ 41 Ran off road
- □ 42 Separation of units
- □ 43 Other *
- □ 44 Unk

EXHIBIT    PAGE    05

## Driver Information (One choice per field unless otherwise noted - Other * should be explained in narrative)

**Unit #:** 2
**Driver Name (Last, First, MI):** KLINGER, ERIKA R
**Person Type:** Driver
**Sex:** [X] 01 M  [ ] 02 F
**DOB:** 02/16/1983
**Contact Phone:** (907) 301-6928

**OL /ID #:** OL:7067918
**O.L.State/State:** AK/ AK
**License Class:** [ ] 01 CDL-A  [ ] 02 CDL-B  [ ] 03 CDL-C  [ ] 04 CDL-1C  [X] 05 D  [ ] 07 M2  [ ] 08 1M  [ ] 09 IP
**Ejected:** [X] 01 Y  [ ] 02 N  [ ] 04 Unk
**Extricated:** [ ] 01 Y  [X] 02 N  [ ] 03 Unk

**Mailing Address:** 5600 LAKE OTIS PKWY H180
**City:** ANCHORAGE
**State:** AK
**Zip:** 99507
**NFR:** [X] 01 Y  [ ] 02 N
**Ins Coverage:** [ ] 01 Y  [ ] 02 N

**Physical Address:** 5600 LAKE OTIS PKWY H180
**City:** ANCHORAGE
**State:** AK
**Zip:** 99507
**Ins Company:** GEICO

### Environment Circumstances:
[ ] 01 Glare
[ ] 02 Obstruction
[ ] 03 Weather
[X] 04 None
[ ] 05 Other *
[ ] 06 Not Reported

### Injury Status:
[ ] 01 Fatal
[ ] 02 Incapacitating *
[ ] 03 Non-incapacitating *
[X] 04 Possible
[ ] 05 None
[ ] 06 Not Reported
[ ] 07 Unk

### Driver Restraint/Airbag (4 choice max):
[X] 01 Not used
[ ] 02 Shldr only
[ ] 03 Helmet
[X] 04 Lap/Shldr
[ ] 05 Lap only
[ ] 06 Shldr only
[ ] 07 Prp Child Rst
[ ] 08 Imp Child Rst
[ ] 09 A/bag Dplyd
[ ] 10 A/bag not Dplyd
[ ] 11 A/bag switch off
[ ] 12 Side bag Dplvd
[ ] 13 Not Reported
[ ] 14 Unk

### Alcohol/Drugs Suspected:
[X] 01 None  [ ] 02 Alcohol  [ ] 03 Drugs  [ ] 04 Both

### Test Given:
[ ] 01 Blood  [ ] 02 Breath  [X] 03 Not Given  [ ] 04 Refused

**BAC Level:**

**Transported:** [ ] 01 Y  [X] 02 N  [ ] 03 Unk

### Human Circumstances (2 choice max):
[X] 01 No improper driving
[ ] 02 Backing unsafely
[ ] 03 Cell phone use
[ ] 04 Disregard traffic control device other than signal
[ ] 05 Driver inattention
[ ] 06 Driver inexperience
[ ] 07 Drove off road
[ ] 08 Emotional
[ ] 09 Failure to yield
[ ] 10 Fell asleep
[ ] 11 Following too closely
[ ] 12 Illness
[ ] 13 Improper lane usage/change
[ ] 14 Improper passing
[ ] 15 Improper turn
[ ] 16 Loss of consciousness
[ ] 17 Passenger distraction
[ ] 18 Pedestrian error/confusion
[ ] 19 Physical disability
[ ] 20 Red light violation
[ ] 21 Stop sign violation
[ ] 22 Taking prescription meds
[ ] 23 Unsafe speed
[ ] 24 Wrong side/way
[ ] 25 Other *
[ ] 26 Unk

### Transported By:
[ ] 01 Air Ambulance
[ ] 02 Airplane
[ ] 03 EMS
[ ] 04 Helicopter
[ ] 05 Police
[ ] 06 Private vehicle
[ ] 07 Unk
[X] 08 N/A

### Transported To:
[ ] 01 Clinic
[ ] 02 Hospital
[ ] 03 Mortuary
[ ] 04 Residence
[ ] 05 Unk
[X] 06 N/A

## Vehicle 2 Information

### Vehicle Damage:
[ ] 01 None/Minor
[X] 03 Disabling
[ ] 04 Totaled
[ ] 02 Functional

**No. of Occupants:** 1

**Vehicle Owner Name (Last, First, MI):** KLINGER, ERIKA R
**Contact Phone:** (907) 301-6928

P - primary
S - secondary

**Mailing Address:** 5600 LAKE OTIS PKWY H180
**City:** ANCHORAGE
**State:** AK
**Zip:** 99507

**Damage Estimate:** [X] Over $501
**VIN:** 1FAFP34P33W259295
**License Plate #:** EUL114
**State:** AK

**Under Carriage Damage:** [ ] 01 Y  [X] 02 N
**Veh Year:** 2003
**Make:** Ford
**Model:**
**Color:** RED

**Direction of Travel:** [ ] 01 North  [ ] 03 East  [ ] 05 Unk  [X] 02 South  [ ] 04 West
**Veh Towed:** [ ] 01Y  [X] 02 N  [ ] 03 Unk
**Towed By:**
**Unit Description:** FORD ESCORT

(Vehicle diagram: FRONT / REAR, positions 01-09, P)

### Vehicle Configuration (non-commercial only):
[ ] 01 Dog Sled
[ ] 02 Light truck (only 4 tires)
[ ] 03 Motorhome
[ ] 04 Motorcycle
[X] 05 Off highway vehicle
[X] 06 Passenger car
[ ] 07 Pedalcycle
[ ] 08 Pedestrian
[ ] 09 Other *
[ ] 10 Unk

### Vehicle Configuration (commercial only):
[ ] 01 Single-unit (2-axles)
[ ] 02 Single-unit (3+ axles)
[ ] 03 Truck/trailer
[ ] 04 Tractor (bobtail)
[ ] 05 Tractor/semi-trailer
[ ] 06 Tractor/doubles
[ ] 07 Tractor/triples
[ ] 08 Van/enclosed box
[ ] 09 Veh heavy truck
[ ] 10 Other *
[ ] 11 Unk

### Body Type (2 choice max, commercial only):
[ ] 01 Auto transporter
[ ] 02 Bus (15 or more seats)
[ ] 03 Bus (7-15 seats)
[ ] 04 School bus
[ ] 05 Cargo tank
[ ] 06 Concrete mixer
[ ] 07 Dump
[ ] 08 Flatbed
[ ] 09 Garbage/refuse
[ ] 10 Grain/chips/gravel
[ ] 11 Pole
[ ] 12 Other *
[ ] 13 Unk

### Vehicle Circumstances:
[ ] 01 Accelerator defective
[ ] 02 Brakes defective
[ ] 03 Headlights defective
[ ] 04 Other lighting defective
[ ] 05 Oversized vehicle
[ ] 06 Steering failure
[ ] 07 Tire failure/inadequate
[ ] 08 Tow hitch defective
[ ] 09 Windshield damaged
[X] 10 None
[ ] 11 Other *
[ ] 12 Unk

### Vehicle Action:
[ ] 01 Avoiding objects in road
[ ] 02 Backing
[ ] 03 Changing lanes
[ ] 04 Entering traffic lane
[ ] 05 Leaving traffic lane
[ ] 06 Making U-turn
[ ] 07 Merging
[ ] 08 Out of control
[ ] 09 Passing
[ ] 10 Parked
[ ] 11 Skidding
[ ] 12 Slowing
[ ] 13 Starting in traffic
[X] 14 Stopped
[ ] 15 Straight ahead
[ ] 16 Turning right
[ ] 17 Turning left
[ ] 18 Other *
[ ] 19 Unk

### Roadway Circumstances:
[ ] 01 Debris
[ ] 02 Inoperative traffic device
[ ] 03 Missing traffic device
[ ] 04 Obscured traffic device
[ ] 05 Obstruction in roadway
[ ] 06 Shoulder
[ ] 07 Road surface condition
[ ] 08 Ruts, holes, bumps
[ ] 09 School zone
[ ] 10 Work zone
[ ] 11 Worn, polished
[X] 12 None
[ ] 13 Other *
[ ] 14 Unk

### Traffic Control:
[ ] 01 Flashing signal
[ ] 02 No controls
[ ] 03 Road const signs
[ ] 04 RR crossing device
[ ] 05 School zone signs
[X] 06 Stop Signs
[ ] 07 Traffic control signal
[ ] 08 Warning signs
[ ] 09 Yield sign
[ ] 10 Officer/flagman/guard
[ ] 11 Other *
[ ] 12 Unk

## Commercial Vehicle Information
(If crash involves a commercial vehicle, complete this section and forward a copy of report to CVE unit, 12050 Industry Way-Bldg O-Suite #6, Anch, AK 99515)

**Carrier Name:**
**Gross Weight (lbs):**

**Address:**
**Carrier ID#:**

**City:**
**State:**
**Zip:**
**Contact Phone:**

### Carrier ID Source:
[ ] 01 Driver/Vehicle
[ ] 02 Log Book
[ ] 03 Shipping Papers
[ ] 04 Trip Manifest

### Issuing Authority:
[ ] 01 US DOT
[ ] 02 ICC
[ ] 03 AKS

### Placard:
[ ] 01Y
[ ] 02 N
[ ] 03Unk

### HazMat Released:
[ ] 01Y
[ ] 02 N
[ ] 03Unk

### First Sequence of Events, Collision:
[ ] 01 Aircraft
[ ] 02 Animal
[ ] 03 Bicyclist
[ ] 04 Bridge/Overpass
[ ] 05 Bridge rail
[ ] 06 Crash cushion
[ ] 07 Culvert
[ ] 08 Curb/Wall
[ ] 09 Ditch
[ ] 10 Embankment
[ ] 11 Fence
[ ] 12 Guard rail face
[ ] 13 Guard rail end
[ ] 14 Light support
[ ] 15 Machinery
[ ] 16 Mail box
[ ] 17 Median barrier
[ ] 18 Moose
[ ] 19 Parked vehicle
[ ] 20 Pedestrian
[ ] 21 Sideswipe
[ ] 22 Sign
[ ] 23 Snow berm
[ ] 24 Traffic signal pole
[ ] 25 Train
[ ] 26 Tree/shrub
[ ] 27 Utility pole
[ ] 28 Veh in transit
[ ] 29 Veh-rear end
[ ] 30 Veh-head on
[ ] 31 Veh-angle
[ ] 32 Other fixed object

### Second Sequence of Events, Non-Collision:
[ ] 33 Cargo loss/shift
[ ] 34 Crossed median/centerline
[ ] 35 Downhill runaway
[ ] 36 Equipment failure
[ ] 37 Explosion/fire
[ ] 38 Immersion
[ ] 39 Jackknife
[ ] 40 Overturn
[ ] 41 Ran off road
[ ] 42 Separation of units
[ ] 43 Other *
[ ] 44 Unk

EXHIBIT          PAGE          OF

# ALASKA MOTOR VEHICLE COLLISION REPORT

| DMV# | Incident/Case # |
|---|---|
| | 08-14210_ |

**Passenger/Witness Information** (One choice per field unless otherwise noted - Other * should be explained in narrative)

---

## Unit #1

| Name (Last, First, MI): POITRA, JEFFREY J | Sex: [X] 01 M  [ ] 02 F | OL/ID #: OL:6977710 /SID:Unknown | O.L.State/ID State: AK/AK |
|---|---|---|---|
| | DOB: 01/21/1984 | | |

| Person Type: | Physical Address: 4334 VANCE DR APT B-1 | City: ANCHORAGE | State: AK | Zip: | Contact Phone: (573) 337-1509 |
|---|---|---|---|---|---|
| [X] 01 Passenger | | | | | |
| [ ] 02 Witness | | | | | |

**Seat Location:**
- [ ] 01 Center front
- [X] 02 Right front
- [ ] 03 Left rear
- [ ] 04 Center Rear
- [ ] 05 Right Rear
- [ ] 06 Other *
- [ ] 07 N/A
- [ ] 08 Unk

**Restraint/Airbag Information (4 choice max):**
- [ ] 01 Not used
- [ ] 02 None Instld
- [ ] 03 Helmet
- [X] 04 Lap/Shldr
- [ ] 05 Lap only
- [ ] 06 Shldr only
- [ ] 07 Prp Chld Rst
- [ ] 08 Imp Chld Rst
- [ ] 09 A/bag Dplyd
- [ ] 10 A/bag not Dplyd
- [ ] 11 A/bag switch off
- [X] 12 Side bag Dplyd
- [ ] 13 Not Reported
- [ ] 14 Unk

**Ejected:**
- [ ] 01 Y
- [X] 02 N
- [ ] 03 P
- [ ] 04 Unk

**Excitcated:**
- [ ] 01 Y
- [X] 02 N
- [ ] 03 Unk

**Injury Status:**
- [ ] 01 Fatal
- [ ] 02 Incapacitating
- [ ] 03 Non-incapacitating
- [ ] 04 Possible
- [X] 05 None
- [ ] 06 Not Reported
- [ ] 07 Unk

**Transported:** [ ] 01 Y  [X] 02 N  [ ] 03 Unk

**Transported By:**
- [ ] 01 Air Ambulance
- [ ] 02 Airplane
- [ ] 03 EMS
- [ ] 04 Helicopter
- [ ] 05 Police
- [ ] 06 Private vehicle
- [ ] 07 Unk
- [X] 08 N/A

**Transported To:**
- [ ] 01 Clinic
- [ ] 02 Hospital
- [ ] 03 Mortuary
- [ ] 04 Residence
- [ ] 05 Unk
- [X] 06 N/A

---

## Unit #

| Name (Last, First, MI): MCCOY, ALMAX | Sex: [X] 01 M  [ ] 02 F | OL/ID #: OL:6878998 /SID:Unknown | O.L.State/ID State: AK/AK |
|---|---|---|---|
| | DOB: 03/14/1956 | | |

| Person Type: | Physical Address: 3931 PATRICIA LN | City: ANCHORAGE | State: AK | Zip: | Contact Phone: (907) 223-0497 |
|---|---|---|---|---|---|
| [ ] 01 Passenger | | | | | |
| [X] 02 Witness | | | | | |

**Seat Location:**
- [ ] 01 Center front
- [ ] 02 Right front
- [ ] 03 Left rear
- [ ] 04 Center Rear
- [ ] 05 Right Rear
- [ ] 06 Other *
- [ ] 07 N/A
- [ ] 08 Unk

**Restraint/Airbag Information (4 choice max):**
- [ ] 01 Not used
- [ ] 02 None Instld
- [ ] 03 Helmet
- [ ] 04 Lap/Shldr
- [ ] 05 Lap only
- [ ] 06 Shldr only
- [ ] 07 Prp Chld Rst
- [ ] 08 Imp Chld Rst
- [ ] 09 A/bag Dplyd
- [ ] 10 A/bag not Dplyd
- [ ] 11 A/bag switch off
- [ ] 12 Side bag Dplyd
- [ ] 13 Not Reported
- [ ] 14 Unk

**Ejected:**
- [ ] 01 Y
- [ ] 02 N
- [ ] 03 P
- [ ] 04 Unk

**Excitcated:**
- [ ] 01 Y
- [ ] 02 N
- [ ] 03 Unk

**Injury Status:**
- [ ] 01 Fatal
- [ ] 02 Incapacitating
- [ ] 03 Non-incapacitating
- [ ] 04 Possible
- [ ] 05 None
- [ ] 06 Not Reported
- [ ] 07 Unk

**Transported:** [ ] 01 Y  [ ] 02 N  [ ] 03 Unk

**Transported By:**
- [ ] 01 Air Ambulance
- [ ] 02 Airplane
- [ ] 03 EMS
- [ ] 04 Helicopter
- [ ] 05 Police
- [ ] 06 Private vehicle
- [ ] 07 Unk
- [ ] 08 N/A

**Transported To:**
- [ ] 01 Clinic
- [ ] 02 Hospital
- [ ] 03 Mortuary
- [ ] 04 Residence
- [ ] 05 Unk
- [ ] 06 N/A

---

## Unit #

| Name (Last, First, MI): | Sex: [ ] 01 M  [ ] 02 F | OL/ID #: | ID State: |
|---|---|---|---|
| | DOB: | | |

| Person Type: | Physical Address: | City: | State | Zip: | Contact Phone: |
|---|---|---|---|---|---|
| [ ] 01 Passenger | | | | | |
| [ ] 02 Witness | | | | | |

**Seat Location:**
- [ ] 01 Center front
- [ ] 02 Right front
- [ ] 03 Left rear
- [ ] 04 Center Rear
- [ ] 05 Right Rear
- [ ] 06 Other *
- [ ] 07 N/A
- [ ] 08 Unk

**Restraint/Airbag Information (4 choice max):**
- [ ] 01 Not used
- [ ] 02 None Instld
- [ ] 03 Helmet
- [ ] 04 Lap/Shldr
- [ ] 05 Lap only
- [ ] 06 Shldr only
- [ ] 07 Prp Chld Rst
- [ ] 08 Imp Chld Rst
- [ ] 09 A/bag Dplyd
- [ ] 10 A/bag not Dplyd
- [ ] 11 A/bag switch off
- [ ] 12 Side bag Dplyd
- [ ] 13 Not Reported
- [ ] 14 Unk

**Ejected:**
- [ ] 01 Y
- [ ] 02 N
- [ ] 03 P
- [ ] 04 Unk

**Excitcated:**
- [ ] 01 Y
- [ ] 02 N
- [ ] 03 Unk

**Injury Status:**
- [ ] 01 Fatal
- [ ] 02 Incapacitating
- [ ] 03 Non-incapacitating
- [ ] 04 Possible
- [ ] 05 None
- [ ] 06 Not Reported
- [ ] 07 Unk

**Transported:** [ ] 01 Y  [ ] 02 N  [ ] 03 Unk

**Transported By:**
- [ ] 01 Air Ambulance
- [ ] 02 Airplane
- [ ] 03 EMS
- [ ] 04 Helicopter
- [ ] 05 Police
- [ ] 06 Private vehicle
- [ ] 07 Unk
- [ ] 08 N/A

**Transported To:**
- [ ] 01 Clinic
- [ ] 02 Hospital
- [ ] 03 Mortuary
- [ ] 04 Residence
- [ ] 05 Unk
- [ ] 06 N/A

---

## Unit #

| Name (Last, First, MI): | Sex: [ ] 01 M  [ ] 02 F | OL/ID #: | ID State: |
|---|---|---|---|
| | DOB: | | |

| Person Type: | Physical Address: | City: | State: | Zip: | Contact Phone: |
|---|---|---|---|---|---|
| [ ] 01 Passenger | | | | | |
| [ ] 02 Witness | | | | | |

**Seat Location:**
- [ ] 01 Center front
- [ ] 02 Right front
- [ ] 03 Left rear
- [ ] 04 Center Rear
- [ ] 05 Right Rear
- [ ] 06 Other *
- [ ] 07 N/A
- [ ] 08 Unk

**Restraint/Airbag Information (4 choice max):**
- [ ] 01 Not used
- [ ] 02 None Instld
- [ ] 03 Helmet
- [ ] 04 Lap/Shldr
- [ ] 05 Lap only
- [ ] 06 Shldr only
- [ ] 07 Prp Chld Rst
- [ ] 08 Imp Chld Rst
- [ ] 09 A/bag Dplyd
- [ ] 10 A/bag not Dplyd
- [ ] 11 A/bag switch off
- [ ] 12 Side bag Dplyd
- [ ] 13 Not Reported
- [ ] 14 Unk

**Ejected:**
- [ ] 01 Y
- [ ] 02 N
- [ ] 03 P
- [ ] 04 Unk

**Excitcated:**
- [ ] 01 Y
- [ ] 02 N
- [ ] 03 Unk

**Injury Status:**
- [ ] 01 Fatal
- [ ] 02 Incapacitating
- [ ] 03 Non-incapacitating
- [ ] 04 Possible
- [ ] 05 None
- [ ] 06 Not Reported
- [ ] 07 Unk

**Transported:** [ ] 01 Y  [ ] 02 N  [ ] 03 Unk

**Transported By:**
- [ ] 01 Air Ambulance
- [ ] 02 Airplane
- [ ] 03 EMS
- [ ] 04 Helicopter
- [ ] 05 Police
- [ ] 06 Private vehicle
- [ ] 07 Unk
- [ ] 08 N/A

**Transported To:**
- [ ] 01 Clinic
- [ ] 02 Hospital
- [ ] 03 Mortuary
- [ ] 04 Residence
- [ ] 05 Unk
- [ ] 06 N/A

---

Davison, Derek _: 29886          Part C          12-200 Revised 9/12/01

EXHIBIT          PAGE

**Narrative Continuation**

DISPATCH:

On 3/28/2008, at approximately 1900 hours, I responded to the intersection of E Tudor Rd. and Vance Dr. for a report of a traffic collision.

ARRIVAL/OBSERVATIONS:

When I arrived, the driver of V2 was present and a male that identified himself as Jeffrey POITRA was present as well. POITRA claimed to be the owner of V1. The driver of V1 had reportedly run away from the scene immediately after the collision.

INTERVIEW:

Erika KLINGER, the driver of V2, reported the following.

KLINGER was stopped on Vance Dr. waiting to turn onto Tudor Rd. V1 was traveling west on Tudor Rd. and started to make a right turn onto Vance from Tudor Rd. at a high rate of speed. The female driver could not make the turn and drove straight into V2. The female driver ran away from the scene immediately after the collision.

KLINGER described the driver of V1 as a white female in her 20's with blonde hair. The driver of V2 would recognize the driver of V1 if she saw her again.

KLINGER added that POITRA was a passenger in V1.

INTERVIEW:

Almax MCCOY, a witness to the collision, reported the following.

MCCOY stated he was following V1 on Tudor Rd. and saw the collision. MCCOY stated the driver of V1 was driving recklessly, switching lanes, and driving very fast. MCCOY said the driver of V1 tried to make the right turn onto Vance Dr. from Tudor Rd. but was traveling too fast and collided with V2. MCCOY did not see the driver of V1.

INTERVIEW:

Jeffrey POITRA a passenger in V1, reported the following.

POITRA claims to be the owner of V1. POITRA said he was intoxicated and allowed a female, whom he just met drive V1 to his residence on Vance Dr. from the 'Peanut Farm' bar.

POITRA said he did not ask the female suspect her name because he just planned on taking her to his apartment for sex and was then going to kick her out. POITRA said the female suspect was intoxicated as well.

POITRA explained that the female suspect was driving too fast to make the turn onto Vance Dr. and collided with V2.

POITRA said he might be able to contact the female suspect but he does not know where she lives, her name, or her phone number.

ACTION TAKEN:

V1, a black GMC Yukon, does not have license plates and it has not been registered in Alaska because I could not find the VIN in APSIN. The VIN sticker on the door had been removed.

POITRA had paperwork from 'Park and Sell' showing the sale of a 2004 GMC Yukon but the VIN on the paperwork did not match the VIN on the dash of V1.

Additionally, POITRA said he has insurance on the vehicle but had no paperwork.

I had the vehicle towed for safekeeping and I put a hold on the vehicle until ownership is established.

INFORMATION:

V2 insured by Geico# 4040-68-39-57.

FOLLOW-UP:

Supplemental reports will follow with any new information.

CASE STATUS:

Pending.

January 10, 2011

Geico Insurance
Attention: Katie Johns
5701 Lake Otis Parkway, Ste. 100
Anchorage, AK 99507

Re:    Kelley & Canterbury client: Erika Stoye (fka Klinger)
       Date of Loss 3/28/08
       Geico insured: Erika Stoye (fka Klinger)
       Geico claim no.: 0281616070101020

Dear Ms. Johns:

   This letter responds to Geicos' letter dated 1/6 and 1/7/11. A disc of exhibits was delivered to Geico in early December 2010 that included Ms. Stoye's medical records from the March 2008 collision and a copy of Ms. Stoye's deposition taken in the third party action. Another copy of those materials is included herewith along with a copy of the police report, photos and medical damages summary establishing in excess of $50,000.00 in past medical expenses. The police photos designate Ms. Stoye was directly impacted on the driver's side by the tortfeasors' SUV and the force of the collision was sufficient enough to push the Stoye vehicle up onto the curb and pin her in the vehicle.

   As stated in the 12/9/10 letter to Geico, Ms. Stoye sustained permanent physical injuries that necessitate future medical treatment of invasive procedures. We are authorized to re-extend an offer to settle Ms. Stoye's UIM claims for the available limits of applicable first party policy. This offer expires on January 24, 2011 at which time, recommendation to file suit will be made.

Sincerely,

Michaela Kelley Canterbury
Attorney at Law
Encl.
Cc: client

EXHIBIT C PAGE OF

GEICO Indemnity Company
GEICO Casualty Company

**DIRECT**

---

**Regional Office: GEICO Direct ▪ Box 509119 ▪ San Diego, CA 92150-9119**

---

January 24, 2011

Kelley & Canterbury
Attn: Michaela Kelly Canterbury
821 N Street, Suite 205
Anchorage, AK 99501

| | |
|---|---|
| Claim Number: | 0281616070101020 |
| Insured: | Erika R Klinger (Stoye) |
| Claimant: | Erika R Klinger (Stoye) |
| Date of Loss: | 03/26/2008 |
| Company: | GEICO General Insurance Company |

Dear Ms. Kelley Canterbury:

This letter is in response to your recent demand for policy limits related to your client's UIM claim from the above mentioned date of loss. We are unable to accept your demand at this time. Please contact me to arrange a time to secure a recorded interview from Ms. Klinger (Stoye). Additionally, enclosed with this letter is a medical authorization release to be signed by your client. Once the requested information is provided we will review and respond.

Sincerely,

Katie Johns / J911
Claims Examiner
800-654-5896 Ext. 12

*1/24/11*

*Ms. Johns:*
*Will Geico agree*
*to arbitrate Ms. Stoyes*
*claims?*
*MKC*

Shareholder Owned Companies Not Affiliated With The U.S. Government

One Geico West Box 509119
San Diego, CA 92150-9119

*217*

02/03/2011

Ms. Michaela Kellycanterbury
821 N St Suite 205
Anchorage, AK 99501

| Company Name: | Geico General Insurance Company |
|---|---|
| Claim Number: | 028161607-0101-020 |
| Loss Date: | Friday, March 28, 2008 |
| Policyholder: | Erika Klinger |

Dear Ms. Kellycanterbury,

Thank you for your recent correspondence. We are declining your request to arbitrate this matter. We have previously requested a detailed recorded statement and signed medical authorization from your client. We are requesting this information so that we can reevaluate your client's claim and amicably resolve the claim through direct settlement discussions with you.

Sincerely,

Katie Johns, Examiner Code J911
(907)561-8100x12
Claims Department

For your protection Alaska law requires the following statement to appear on this form: "A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law."

EC0020 (1/2007)